UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| THOMAS CONRY, BRITTANY CAMERON, KELSEY DAKER, KATHRYN FOLLETT, CHRISTINA HALL, DANIELLE HARRIS, CAREY LAVELLEE, AMY MOORE, ASHLEY OROZCO, JESSICA PATRICH, HAILEY RONAYNE, NICOLE SATTERLY, SYDNEY SEGRETTO, ROBYN SUSSMAN, LAILA VOLLE, and SAMANTHA ZOMER individually and on behalf of all others similarly situated, | : : : : : : : : : : : | |
| Plaintiffs, | : : | Civil Action No. 3:24-cv-295 |
| v. | : : | |
| GERBER PRODUCTS COMPANY, PERRIGO COMPANY PLC, L. PERRIGO COMPANY, and PBM NUTRITIONALS, LLC, | : : : : : | FIRST AMENDED CLASS ACTION COMPLAINT JURY TRIAL DEMANDED |
| Defendants. | : | |

Plaintiffs Thomas Conry, Brittany Cameron, Kelsey Daker, Kathryn Follett, Christina Hall, Danielle Harris, Carey LaVelle, Amy Moore, Ashley Orozco, Jessica Patrich, Hailey Ronayne, Nicole Satterly, Sydney Segretto, Robyn Sussman, Laila Volle, and Samantha Zomer ("Plaintiffs"), on behalf of themselves and all others similarly situated (the "Classes" as defined in ¶¶ 108 - 109 below), upon personal knowledge as to the facts pertaining to themselves and upon information and belief as to all other matters, and based on the investigation of counsel, bring this class action seeking injunctive, monetary, and other appropriate relief. Plaintiffs bring this action against Defendants Gerber Products Company ("Gerber"), Perrigo Company plc ("Perrigo Parent"), L.

Perrigo Company ("LPC"), and PBM Nutritionals, LLC ("PBM")[1] for their violations of federal antitrust laws and state antitrust, consumer protection, and unjust enrichment laws.

## NATURE OF THE ACTION

1.     Plaintiffs bring this action on behalf of themselves and the Classes of indirect purchasers of store-brand ("Store-Brand")[2] infant formula from Perrigo through U.S. retailers[3] ("Retailers") from April 22, 2020 to the present ("Class Period").[4]

2.     At all relevant times, Perrigo has dominated the relevant product market—Store-Brand infant formula—to Retailers in the relevant geographic market—the United States (the "Relevant Market").

3.     Multiple factors make entry into the Relevant Market prohibitive, including the very high cost to build an infant formula manufacturing plant and the time and resources necessary to meet the FDA's stringent quality standards for new formula.

4.     Not satisfied with steep entry barriers, and in order to further protect its continuing market dominance, Perrigo entered into an unlawful agreement with Gerber to foreclose competition in the Relevant Market, resulting in higher prices and harm to consumers.

5.     A potential competitor of Perrigo, P.L. Developers, LLC ("PLD"), sought to enter the Relevant Market. PLD contracted with Gerber (the "Contract," attached hereto as Exhibit 1) to purchase Gerber's excess capacity of infant formula. PLD was prepared to package, market, and sell that formula as Store-Brand infant formula to Retailers.

---

[1] Perrigo Parent, LPC, and PBM will be referred to collectively as "Perrigo."
[2] Store-Brand products are sold under private label brands by retailers in their chain stores.
[3] Retailers include Walmart, Kroger, CVS, Target, Meijer, Rite Aid, Costco, and Walgreens, to name a few.
[4] Discovery is necessary to determine the full scope of Defendants' anticompetitive conduct, including the time frame, products, and participants, and may uncover actionable conduct outside the present Class Period.  Accordingly, Plaintiffs reserve their right to amend the Class Period.

6.      Under the Contract, PLD and Gerber entered into a partnership (the "Partnership") for an initial period of seven (7) years to manufacture and distribute Store-Brand infant formula to Retailers, in competition with Perrigo.

7.      Unknown to PLD at that time, Gerber was already party to an unlawful conspiracy and agreement with Perrigo (the "Anticompetitive Agreement") that had the goal and the effect of keeping new entrants out of the market for the sale of Store-Brand infant formula to Retailers and preserving Perrigo's monopoly in that market.

8.      As part of that Anticompetitive Agreement, Gerber had agreed to give Perrigo a "first right" to Gerber's excess capacity, such that Perrigo had the ability to block PLD or any other competitor from entering the Store-Brand infant formula market.

9.      In so doing, the Anticompetitive Agreement preserved Perrigo's monopoly power in that market.

10.     When Gerber informed Perrigo of its Contract with PLD, Perrigo exercised its first right under the Anticompetitive Agreement and acquired the excess capacity Gerber promised to PLD. Gerber thus reneged on its Contract with PLD in order to comply with its Anticompetitive Agreement with Perrigo.

11.     Also under the Anticompetitive Agreement, Perrigo cemented its status as the only actual or even potential supplier with access to Gerber's excess capacity when, in November 2022, Perrigo purchased the U.S. and Canadian rights to the Gerber Good Start brand, as well as Nestlé's Gateway plant in Eau Claire, Wisconsin (the "Gateway Plant").

12.     By excluding PLD from the Relevant Market, Gerber and Perrigo garnered monopoly profits that resulted in higher retail infant formula prices paid by consumers such as Plaintiffs and the Classes.

3

13.     Defendants' anticompetitive conduct violates Section 16 of the Clayton Act, 15 U.S.C. § 26, and warrants injunctive relief under Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, as well as monetary relief under various state laws.

## PARTIES

14.     Plaintiff Thomas Conry is a resident of California. During the Class Period and while residing in California, Plaintiff Conry indirectly purchased Perrigo Store-Brand infant formula in California for personal use and not for resale. Plaintiff Conry suffered injury as a result of Defendants' conduct alleged herein.

15.     Plaintiff Brittany Cameron is a resident of Illinois. During the Class Period and while residing in Illinois, Plaintiff Cameron indirectly purchased Perrigo Store-Brand infant formula in Illinois for personal use and not for resale. Plaintiff Cameron suffered injury as a result of Defendants' conduct alleged herein.

16.     Plaintiff Kelsey Daker is a resident of Illinois. During the Class Period and while residing in Illinois, Plaintiff Daker indirectly purchased Perrigo Store-Brand infant formula in Illinois for personal use and not for resale. Plaintiff Daker suffered injury as a result of Defendants' conduct alleged herein.

17.     Plaintiff Kathryn Follett is a resident of North Carolina. During the Class Period and while residing in North Carolina, Plaintiff Follett indirectly purchased Perrigo Store-Brand infant formula in North Carolina for personal use and not for resale. Plaintiff Follett suffered injury as a result of Defendants' conduct alleged herein.

18.     Plaintiff Christina Hall is a resident of South Carolina. During the Class Period and while residing in South Carolina, Plaintiff Hall indirectly purchased Perrigo Store-Brand infant

formula in South Carolina for personal use and not for resale. Plaintiff Hall suffered injury as a result of Defendants' conduct alleged herein.

19.     Plaintiff Danielle Harris is a resident of Missouri. During the Class Period and while residing in Missouri, Plaintiff Harris indirectly purchased Perrigo Store-Brand infant formula in Missouri for personal use and not for resale. Plaintiff Harris suffered injury as a result of Defendants' conduct alleged herein.

20.     Plaintiff Carey LaVellee is a resident of Virginia. During the Class Period and while residing in Virginia, Plaintiff LaVellee indirectly purchased Perrigo Store-Brand infant formula in Virginia for personal use and not for resale. Plaintiff LaVellee suffered injury as a result of Defendants' conduct alleged herein.

21.     Plaintiff Amy Moore is a resident of Nebraska. During the Class Period and while residing in Nebraska, Plaintiff Moore indirectly purchased Perrigo Store-Brand infant formula in Nebraska for personal use and not for resale. Plaintiff Moore suffered injury as a result of Defendants' conduct alleged herein.

22.     Plaintiff Ashley Orozco is a resident of Florida. During the Class Period and while residing in Florida, Plaintiff Orozco indirectly purchased Perrigo Store-Brand infant formula in Florida for personal use and not for resale. Plaintiff Orozco suffered injury as a result of Defendants' conduct alleged herein.

23.     Plaintiff Jessica Patrich is a resident of Tennessee. During the Class Period and while residing in Tennessee, Plaintiff Patrich indirectly purchased Perrigo Store-Brand infant formula in Tennessee for personal use and not for resale. Plaintiff Patrich suffered injury as a result of Defendants' conduct alleged herein.

24.     Plaintiff Hailey Ronayne is a resident of Michigan. During the Class Period and while residing in Michigan, Plaintiff Ronayne indirectly purchased Perrigo Store-Brand infant formula in Michigan for personal use and not for resale. Plaintiff Ronayne suffered injury as a result of Defendants' conduct alleged herein.

25.     Plaintiff Nicole Satterly is a resident of New York. During the Class Period and while residing in New York, Plaintiff Satterly indirectly purchased Perrigo Store-Brand infant formula in New York for personal use and not for resale. Plaintiff Satterly suffered injury as a result of Defendants' conduct alleged herein.

26.     Plaintiff Sydney Segretto is a resident of Illinois. During the Class Period and while residing in Illinois, Plaintiff Segretto indirectly purchased Perrigo Store-Brand infant formula in Illinois for personal use and not for resale. Plaintiff Segretto suffered injury as a result of Defendants' conduct alleged herein.

27.     Plaintiff Robyn Sussman is a resident of Pennsylvania. During the Class Period and while residing in Pennsylvania, Plaintiff Sussman indirectly purchased Perrigo Store-Brand infant formula in Pennsylvania for personal use and not for resale. Plaintiff Sussman suffered injury as a result of Defendants' conduct alleged herein.

28.     Plaintiff Laila Volle is a resident of New Hampshire. During the Class Period and while residing in New Hampshire, Plaintiff Volle indirectly purchased Perrigo Store-Brand infant formula in New Hampshire for personal use and not for resale. Plaintiff Volle suffered injury as a result of Defendants' conduct alleged herein.

29.     Plaintiff Samantha Zomer is a resident of Minnesota. During the Class Period and while residing in Minnesota, Plaintiff Zomer indirectly purchased Perrigo Store-Brand infant

formula in Minnesota for personal use and not for resale. Plaintiff Zomer suffered injury as a result of Defendants' conduct alleged herein.

30.     Defendant Perrigo Parent is a corporation that manufactures and sells pharmaceutical and personal care products, including Store-Brand infant formula. Perrigo Parent is incorporated in Ireland and has its principal place of business in Grand Rapids, Michigan.

31.     Defendant LPC is a corporation that manufactures and sells pharmaceutical and personal care products, including Store-Brand infant formula. LPC is incorporated in Michigan and has its principal place of business in Allegan, Michigan. LPC is a direct wholly-owned subsidiary of Perrigo Parent.

32.     Defendant PBM is a limited liability company incorporated in Delaware and has its principal place of business in Milton, Vermont. As of 2010, PBM was the world's largest manufacturer of Store-Brand infant formula. It sells infant formula under its own label as well as under private-label brands, including Retailers like Wal-Mart and Target. Perrigo Parent acquired PBM in 2010.[5] PBM is an indirect wholly-owned subsidiary of Perrigo Parent.

33.     Defendant Gerber is a corporation that manufactures and sells baby food, infant formula, and other child nutritional products. Gerber does not sell Store-Brand infant formula to Retailers. Gerber is incorporated in Michigan and has its principal place of business in Arlington, Virginia.

34.     Gerber is a direct wholly-owned subsidiary of Nestlé Holdings, Inc., which is an indirect wholly-owned subsidiary of Nestlé, S.A. ("Nestlé"). Nestlé acquired Gerber and its Good Start formula brand in 2007.

---

[5] *Perrigo Acquires Infant Formula Manufacturer PBM Holdings for $808 Million* (Mar. 23, 2010), https://investor.perrigo.com/2010-03-23-Perrigo-Acquires-Infant-Formula-Manufacturer-PBM-Holdings-for-808-Million (last visited April 18, 2024).

35.     In 2018, Gerber moved its headquarters to Arlington, Virginia to make it closer to Nestlé, its corporate parent.[6]

36.     Unnamed co-conspirators include others who acted in concert with Defendants as to the anticompetitive conduct alleged herein.

## JURISDICTION AND VENUE

37.     Plaintiffs bring this class action on behalf of the Damages Class (defined below) to recover actual and/or compensatory damages, including double and treble damages as permitted by state law. This class action is also brought on behalf of the Nationwide Class (defined below) to enjoin Defendants' conduct in anticompetitively fixing, maintaining, and/or stabilizing the price of Store-Brand infant formula. Plaintiffs bring this action on behalf of the Nationwide Class under Section 16 of the Clayton Act (15 U.S.C. § 26) to secure injunctive relief against Defendants for violating Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1, 2). This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1337, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

38.     Plaintiffs also assert claims pursuant to the common law of unjust enrichment and the state antitrust and consumer protection laws. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1332(d) and 1367, in that: (i) this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and in which some members of the Classes are citizens of a state different from some Defendants; and (ii) Plaintiffs' state law claims form part of the same case or controversy as their federal claims under Article III of the United States Constitution.

---

[6] *Gerber Relocates U.S. Headquarters to Arlington, Virginia* (Apr. 25, 2018) https://www.arlingtonchamber.org/blog/gerber-relocates-us-headquarters-to-arlington-virginia (last visited June 11, 2024).

39.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), (c), and (d) because one or more Defendants resided or transacted business in this District and/or is licensed to do business and/or is doing business in this District, and because a substantial portion of the affected interstate commerce described herein was carried out in this District.

40.     This Court has personal jurisdiction over each Defendant because, *inter alia,* each Defendant: (a) transacted business throughout the United States, including in this District; (b) manufactured, shipped, sold, and/or delivered substantial quantities of Store-Brand infant formula throughout the United States, including this District; (c) had substantial contacts with the United States, including this District; and/or (d) engaged in anticompetitive conduct that was directed at and had a direct, foreseeable, and intended effect of causing injury to the business or property of persons residing, located, doing business, or purchasing Store-Brand infant formula in this District.

## **INTERSTATE TRADE AND COMMERCE**

41.     The primary effect of Defendants' anticompetitive conduct has been on domestic commerce. Perrigo manufactures and sells Store-Brand infant formula across state lines in an uninterrupted flow of interstate commerce.

42.     The anticompetitive effects of Defendants' actions have been carried out in interstate commerce in the United States, where Retailers and consumers were deprived of competition in the market, thereby increasing prices, reducing innovation and quality of service, and lowering output.

## FACTUAL BACKGROUND

### I.    The Relevant Market for the Sale of Store-Brand Infant Formula

43.    The relevant product market is the sale of Store-Brand infant formula to Retailers, and the relevant geographic market is the United States.

44.    The production of infant formula in the United States is heavily concentrated. Following Perrigo's purchase of the U.S. and Canadian rights to the Gerber Good Start brand and the Gateway Plant, three manufacturers account for 99% of infant formula sold in the United States: (1) Perrigo, (2) non-party Abbott Laboratories ("Abbott"), and (3) non-party Mead Johnson & Company LLC ("Mead Johnson").[7]

45.    Perrigo is the only manufacturer of Store-Brand infant formula sold to Retailers in the United States.

46.    Abbott and Mead Johnson do not sell Store-Brand infant formula to Retailers, but instead only sell infant formula under their national brands ("Branded" infant formula), i.e., (1) Similac® (sold by Abbott) and (2) Enfamil® (sold by Mead Johnson).

47.    The sale of Store-Brand infant formula to Retailers is distinct from and not reasonably interchangeable with the sale of Branded infant formula to Retailers.

48.    While Store-Brand infant formula products are manufactured to be the same as or equivalent to Branded products, they are marketed very differently by the manufacturers. Manufacturers of Branded infant formula, for example, compete with each other by spending millions of dollars annually on advertising and marketing to attract new parents to their Branded formulas.

---

[7] *Market Factors Relevant to Infant Formula Supply Disruptions 2022: A report of the Federal Trade Commission*, March 13, 2024, available at https://www.ftc.gov/system/files/ftc_gov/pdf/infant-formula-report.pdf (last visited April 18, 2024).

49.     In contrast, Store-Brand suppliers do not focus on marketing. Instead, they sell the product to Retailers at a significantly discounted price so that Retailers can (1) offer the product to consumers at a discount to the Branded products, and (2) still make more profit on the sale of the Store-Brand product than they do on the Branded products. In the case of infant formula, Retailers sell Branded products at prices that may exceed the price of Store-Brand products by 60% or more.[8]

50.     Manufacturers of Branded infant formula do not sell Store-Brand infant formula. Both Abbott and Mead Johnson lack the additional capacity to expand their production of infant formula beyond their current levels utilized for their national brands, and they do not have the ability to further scale up production to sell infant formula for resale as Store-Brand infant formula.[9] The third Branded manufacturer, Gerber, had additional capacity, but, as discussed below, it conspired with Perrigo to prevent PLD or others from competing in the Relevant Market.

51.     Regarding the relevant geographic market (the United States), as discussed below, the manufacture of infant formula is subject to import tariffs and other substantial federal regulations. The United States imports very little infant formula; between 2012 and 2021, out of total average annual production of over 527 million kilograms of infant formula, only 3.2 million

---

[8] *See Perrigo Announces Strategic Investment to Expand and Strengthen U.S. Manufacturing of Infant Formula*, available at https://investor.perrigo.com/2022-11-01-Perrigo-Announces-Strategic-Investment-to-Expand-and-Strengthen-U-S-Manufacturing-of-Infant-Formula    (last visited April 18, 2024) ("Prior to the Gateway plant purchase, Perrigo had insufficient capacity to meet consumer demand for its 17 store brand customers that sell infant formula at approximately a 50% discount to te [sic] major national brands.").

[9] In 2022, the United States experienced a formula shortage and Mead Johnson could not increase production to meet demand and was required to obtain approval from the FDA to import formula from Mexico. *See Reckitt's Mead Johnson Receives FDA Approval to Import 66 Million Servings of Infant Formula Focusing on Vulnerable Consumers*, https://www.prnewswire.com/news-releases/reckitts-mead-johnson-receives-fda-approval-to-import-66-million-servings-of-infant-formula-focusing-on-vulnerable-consumers-301569076.html (last visited April 18, 2024).

kilograms was imported, as compared to an average domestic production during that same period of 524 million kilograms.[10]

52.     Perrigo's Store-Brand infant formula business generates hundreds of millions of dollars annually.

53.     Perrigo sells its Store-Brand infant formula to about 68 Retailers, which in turn sell formula to consumers in more than 40,000 retail locations throughout the United States. Perrigo is the only supplier of Store-Brand infant formula, and, as a result, Retailers have no choice but to pay Perrigo's monopoly prices.

## II.     High Barriers to Entry in the Relevant Market

54.     On May 14, 2019, Perrigo's CEO described the market's high entry barriers as "significant" and having "high moats," acknowledging that "there are only 3 or 4 approved manufacturers in the United States, and it's been 20 years since the FDA approved another." Among such barriers are (1) the cost of tens of millions of dollars to construct, and years to complete, an infant formula manufacturing plant, and (2) the expense and time to conduct clinical trials required under FDA regulations for marketing new infant formula products.

55.     FDA regulations require that new infant formula meet two "quality factors."[11] The formula must support "normal physical growth"[12] and contain proteins of "sufficient biological quality."[13] Meeting the two factors requires considerable clinical testing.

---

[10] Congressional Research Service, *Tariffs and the Infant Formula Shortage*, Christopher A. Casey, May 23, 2022, available at https://crsreports.congress.gov/product/pdf/IN/IN11932 (last visited April 18, 2024).
[11] 21 CFR § 106.96.
[12] *Id.* § 106.96(a).
[13] *Id.* § 106.96(e).

56.     To satisfy these factors, the manufacturer must (1) run a specific preclinical study measuring protein efficiency,[14] and (2) conduct a "well-controlled growth monitoring study,"[15] which requires a minimum of 15 weeks. The FDA may exempt a manufacturer from the two required studies, but the exemption process is similarly time and resource intensive.

57.     The FDA also has specific requirements for the formula contents, such as minimum and maximum quantities of various nutrients.[16] If the formula does not meet the required quality factors or nutritional content specifications, it is deemed adulterated.[17]

58.     Before a manufacturer can market its formula, it must go through a months-long process of submissions to the FDA, including a "notice of intent" that details the formula's contents and directions for use, and demonstrates the formula's "quality" as supported by the manufacturer's required studies.[18]

59.     A manufacturer must spend at least 195 days in an evaluation phase before it can begin selling formula, and the FDA may require additional information, which can further delay the process.

60.     While the FDA categorizes infant formula as food, many aspects of the regulatory scheme are similar to its regulation of pharmaceuticals. Some infant formula manufacturers have spent more than $190 million and five years of work in the evaluation phase before making their first sale.[19]

---

[14] *Id.* § 106.96(f).
[15] *Id.* § 106.96(b).
[16] *Id.* § 107.100.
[17] *Id*. § 106.1; 21 U.S.C. § 350a.
[18] 21 CFR § 106.120.
[19] *A Startup Wanted to Make a Better Baby Formula. It Took Five Long Years*, Forbes (Mar. 17, 2022), available at https://www.forbes.com/sites/laurendebter/2022/05/17/byheart-startup-wanted-to-make-a-better-baby-formula-it-took-five-years/?sh=3d743e2d623e (last visited April 18, 2024).

61.     In contrast to formula, baby food has no similar set of regulations, and the FDA regulates it as it does other foods. The difference in approach is based on the fact that formula constitutes a newborn's "sole source of nutrition."[20]

62.     To attract Retailer interest, entry into the Store-Brand infant formula market requires multiple types of formula, adding millions in costs for clinical trials.

63.     The FDA treats incumbent formula manufacturers differently. Existing manufacturers of infant formula do not have to conduct any clinical trials to sell their products because they are "grandfathered in" and are thus exempt from the requirement to conduct growth monitoring studies for their existing formulas.

64.     Because of these barriers to entry and high market concentration, the infant formula market is susceptible to tacit or explicit collusion. In 1992, the FTC charged Abbott, Mead Johnson, and American Home Products Corp. (later known as Wyeth) for violating Section 5 of the FTC Act (prohibiting "unfair or deceptive acts or practices in or affecting commerce"). *FTC v. Abbott Labs.*, 853 F. Supp. 526, 537 (D.D.C. 1994) (while Abbott was cleared of wrongdoing, the court found that Mead and Wyeth engaged in "violative conduct," and those defendants settled with the FTC). In 1991, the Florida Attorney General filed a price-fixing complaint against infant formula manufacturers Abbot, Bristol Myers, and American Home Products, which settled for $13 million. *See Florida v. Abbott Labs.*, No. 91-40002, *In re Infant Formula Antitrust Litig.*, MDL 878 (N.D. Fla. 1991).

---

[20] *FDA Evaluation of Infant Formula Response*, U.S. Food & Drug Admin. (Sept. 2022), available at https://www.fda.gov/media/161689/download (last visited April 18, 2024).

### III.   PLD Attempts to Enter the Market.

65.    PLD is a family-owned and -operated business that contracts with major Retailers nationwide to supply them with Store-Brand over-the-counter ("OTC") products.

66.    PLD manufactures, packages, and distributes a broad range of Store-Brand pharmaceutical and consumer healthcare products, including solid and liquid dose OTC analgesic, digestive, cough/cold, allergy, sleep, and motion sickness medication, first aid ointments and related products, personal and feminine care, supplements, electrolytes, and nicotine replacement therapy products.

67.    PLD and Perrigo compete to supply Retailers with Store-Brand products to be sold to consumers.

68.    To effectively serve Retailers and ensure a reliable, uninterrupted supply to U.S. consumers of Store-Brand alternatives to Branded products, PLD maintains manufacturing, packaging, and distribution facilities in Westbury, NY; Copiague, NY; Miami, FL; Lynwood, CA; Clinton, SC; Piedmont, SC; and Duncan, SC.

69.    Perrigo, which is PLD's primary competitor for the sale of Store-Brand OTC pharmaceutical products to Retailers, is the largest supplier of Store-Brand OTC pharmaceutical products in the United States.

70.    PLD attempted to enter the Relevant Market, which would result in broader supply options for Retailers, lower prices, and increased output. Such increased competition would concomitantly result in lower prices for consumers such as Plaintiffs and members of the Classes.

### IV.   The Contract Between Gerber and PLD

71.    In late 2019, PLD identified Gerber as a viable business partner to facilitate PLD's entry into the Relevant Market and began discussions and negotiations on a potential partnership.

72.     The negotiations between Gerber and PLD were primarily between Gerber's Jose Cabrera, Dominic Strada, and other members of their team based in Arlington, VA, and PLD's Tom Cotter based in Westbury, NY. These negotiations involved at least two in-person meetings at Gerber's Arlington headquarters. *See* Exhibit 2 (Jan. 16, 2020 email chain); Exhibit 3 (Feb. 7, 2020 email chain).

73.     By partnering with Gerber, PLD could enter the Relevant Market and sell Store-Brand infant formula to Retailers without the significant expenditures and burden of lengthy clinical trials, including infant growth-monitoring studies.

74.     Beginning in late 2019, and continuing through early 2021, PLD and Gerber negotiated an agreement (the "Contract," *see* ¶ 5 above; Exhibit 1 hereto) by which (1) Gerber would manufacture and provide PLD with infant formula products; (2) PLD would package, market, sell, and distribute those products to Retailers in the United States for resale under their Store-Brand labels; and (3) Gerber and PLD would share the profits from PLD's sales to Retailers.

75.     Gerber and PLD had agreed upon a price of the Store-Brand infant formula to be sold to PLD that would make the Contract profitable to both Parties. The Contract negotiations lasted 15 months, and on February 26, 2021, PLD and Gerber executed the Contract. The Contract, titled "Memorandum of Understanding (Binding)," contains all the essential elements of a valid, binding, and enforceable contract, including (a) price, (b) quantity, and (c) time and manner of delivery. *See* Exhibit 1. The Contract provides that "PLD shall purchase from Gerber all of PLD's requirements of the Products, for resale as Store-Brand products within the Territory." *See* Exhibit 1 at 2. The Contract defines the "Territory" as "the United States of America and its territories and possessions and military installations." *Id.* In addition to memorializing all essential terms of price,

quantity, and time and manner of delivery, the Contract provides other terms and conditions governing performance. *See id.*

76.    The Contract was a commercially-sensitive agreement between Gerber and PLD that required those parties "to keep all information, in any form, relating to [the Contract], the Products and negotiations contemplated by [the Contract] strictly confidential and not disclose any Confidential Information without the prior written consent of the other party." Exhibit 1 at 5.

## V.    Perrigo's Anticompetitive Agreement with Gerber

77.    Perrigo knew that two of the three Branded infant formula manufacturers (Abbott and Mead Johnson) lacked the capacity to meaningfully enter the Relevant Market, and was thus able to protect its monopoly by entering into the Anticompetitive Agreement.

78.    Under the Anticompetitive Agreement, Perrigo had a "first right" to Gerber's excess capacity and, therefore, the ability to foreclose competition in the Relevant Market.

79.    Perrigo knew that Gerber (a) possessed enough excess capacity to supply the entire Store-Brand infant formula market, and (b) would not be required to conduct the extremely expensive, time-consuming clinical trials and infant growth monitoring studies required of a new entrant in the Relevant Market.

80.    The Anticompetitive Agreement prevented Gerber from selling its excess capacity to any potential market entrant, enabling Perrigo to preserve its monopoly position in the Relevant Market.

81.    In exchange, Perrigo agreed that Gerber would directly and/or indirectly reap a share of Perrigo's profits.

## VI.    <u>Gerber Reneges on the Contract</u>

82.    After PLD and Gerber executed the Contract, PLD contacted Retailers, including Walmart and Walgreens, to promote the Partnership (*see* ¶ 6 above) and the upcoming availability of its Store-Brand infant formula as an alternative to Perrigo's product.

83.    In April 2021, during separate meetings with Walmart and Walgreens, PLD introduced its plan to enter the Relevant Market. PLD then scheduled another meeting with Walmart for May 13, 2021, to further discuss PLD's market entry, and the terms of a potential supply agreement between PLD and Walmart.

84.    Instead of honoring its obligations under the Contract, Gerber notified Perrigo about PLD's efforts to enter the Relevant Market. Thus, Gerber breached the Contract in order to collude with Perrigo to keep PLD from selling Store-Brand infant formula.

85.    Upon learning of Gerber's confidential Contract with PLD and that PLD might soon begin purchasing Gerber's excess supply to be sold as Store-Brand infant formula in competition with Perrigo's products, Perrigo exercised its "first right" under the Anticompetitive Agreement to purchase Gerber's excess supply of formula.

86.    On May 12, 2021, one day before PLD's scheduled meeting with Walmart, Gerber informed PLD that Gerber would be putting "on hold" the performance of its obligations under the Contract due to Gerber's Anticompetitive Agreement with Perrigo, about which Gerber failed to tell PLD.

87.    On May 13, 2021, PLD asked Gerber to provide more information about the other agreement, including an explanation of how, if at all, Gerber anticipated it might affect the Contract's timeline for bringing competing Store-Brand infant formula to the Relevant Market under the Partnership.

88.     Gerber CEO Tarun Malkani informed PLD that the other "agreement" gave Perrigo a first right for Gerber's business with respect to Store-Brand infant formula.

89.     After learning that Gerber had breached the Contract, PLD canceled its May 13, 2021 meeting with Walmart.

90.     On May 20, 2021, PLD sent Gerber a letter seeking assurances that Gerber intended to honor its commitments to PLD and perform its obligations under the Contract. Instead of providing those assurances, Gerber denied the very existence of the Contract.

91.     PLD nevertheless repeatedly sought assurances that Gerber was taking the necessary steps to fulfill its obligations under the Contract, including filing certain documents with the FDA. In each instance, Gerber ignored PLD's requests.

92.     On September 21, 2021, adhering to its Anticompetitive Agreement with Perrigo, Gerber General Counsel Kevin Goldberg advised PLD that Gerber had taken no steps and would not take the necessary steps required by the Contract to file the required documents with the FDA.

93.     The Anticompetitive Agreement ensured that Perrigo would continue to reap monopoly profits by preventing the entry of PLD as a market competitor.

94.     By letter dated September 22, 2021, PLD informed Gerber that its conduct and communications were a repudiation and material breach of the Contract. The letter further advised Gerber that PLD considered the repudiation final, PLD's performance under the Contract excused, the Contract terminated, and that PLD would be seeking damages caused by Gerber's breach.

95.     On September 28, 2021, PLD sued Perrigo and Gerber (Case No. 21-cv-5382 (E.D.N.Y.)), alleging violations of the Sherman Act as well as New York law. On February 6, 2024, the court denied the defendants' motion to dismiss for failure to state a claim. *See P & L*

*Development, LLC v. Gerber Products Co. et al.*, No. 21-cv-5382, Dkt. No. 102 (the "PLD Action"). That action is pending, and discovery is proceeding.

## VII.  **Perrigo Purchases Gerber's Good Start Brand and Nestlé's Gateway Plant**

96.    In November 2022, Perrigo announced that it had acquired Nestlé's Gateway Plant, as well as the U.S. and Canadian rights to the Good Start® infant formula brand for $110 million.[21] This acquisition furthered Defendants' objective under the Anticompetitive Agreement, namely, to keep PLD or any other potential rival from entering the market.

97.    While Perrigo claimed that the additional capacity it obtained by purchasing the Gateway Plant would enable it to "more effectively compete," in reality, Perrigo's acquisition of the Gateway Plant simply made the Anticompetitive Agreement permanent, preventing PLD (and any other potential competitor) from getting access to Gerber's excess supply.

98.    By purchasing the Gateway Plant, Perrigo increased its control over the Relevant Market, and further strengthened its monopoly position as the only supplier of Store-Brand infant formula in the United States.

## ANTICOMPETITIVE CONDUCT AND EFFECTS

99.    Through the Anticompetitive Agreement, Defendants have foreclosed competition in the Relevant Market by maintaining Perrigo's monopoly position and keeping competition out of that market. But for Defendants' conduct, PLD would have competed in the market.

---

[21] *Perrigo Purchases Nestlé's Gateway infant formula plant*, https://www.perrigopediatrics.com/infant-formula-investment-nestle-gateway-plant/default.aspx#:~:text=Perrigo%20has%20acquired%20Nestl%C3%A9's%20Gateway,the%20United%20States%20and%20Canada (last visited June 17, 2024); Perrigo 2022 10-K, at 40, https://app.quotemedia.com/data/downloadFiling?webmasterId=101533&ref=117294078&type=PDF&symbol=PRGO&companyName=Perrigo+Company+plc&formType=10-K&dateFiled=2023-02-28&CK=1585364 (last visited June 17, 2024).

100.    As a result, Defendants have impacted a substantial volume of commerce in the Relevant Market and caused antitrust injury to infant formula Retailers as well as consumers. As a direct and proximate result of Defendants' anticompetitive conduct, Plaintiffs and the Classes paid supracompetitive prices for Store-Brand infant formula.

101.    Moreover, by blocking PLD from entering the Relevant Market, Defendants have preserved Perrigo's monopoly power and foreclosed the benefits of competition, i.e., decreased prices and cost, and increased innovation, quality of service, and output.

102.    Plaintiffs' injuries were foreseeable and intended. Defendants were fully aware PLD would be unable to enter the Relevant Market absent the fulfillment of Gerber's obligations under the Contract.

## DEFENDANTS' CONCEALMENT OF THE CONSPIRACY

103.    Defendants engaged in an illegal scheme to preserve Perrigo's monopoly position in the Relevant Market in violation of the federal and state antitrust laws. Criminal and civil penalties for engaging in such conduct are severe. Not surprisingly, Defendants took affirmative measures to conceal their conspiratorial conduct.

104.    Defendants kept the Anticompetitive Agreement a secret from consumers, Retailers, and PLD (until months after Gerber and PLD signed the Contract, when it was too late).

105.    Plaintiffs and other members of the Classes had no ability through the exercise of reasonable diligence to learn of the Anticompetitive Agreement before the filing of the PLD Action when the existence of the Anticompetitive Agreement came to light. Plaintiffs reasonably considered the market for Store-Brand infant formula to be untainted by an illegal conspiracy among Defendants.

106.    Through their misleading, deceptive, false, and fraudulent statements and material omissions, Defendants effectively concealed their anticompetitive conduct from Plaintiffs and the Classes.

107.    Therefore, the running of any statutes of limitations has been tolled for all claims alleged by Plaintiffs and the Classes as a result of Defendants' unlawful conduct. Despite the exercise of reasonable diligence, Plaintiffs and the Classes were unaware of Defendants' unlawful conduct until at least February 1, 2022,[22] and had no way of knowing they were paying supracompetitive prices for Store-Brand infant formula throughout the United States during the Class Period.

## CLASS ACTION ALLEGATIONS

108.    Plaintiffs bring this action on behalf of themselves and as a class action under Fed. R. Civ. P. 23(a) and (b)(2), seeking equitable and injunctive relief on behalf of the following class (the "Nationwide Class"):

> **Nationwide Class:** All persons in the United States who, from April 22, 2020 to the present (the "Class Period"), indirectly purchased Store-Brand infant formula for personal use and not for resale that was manufactured or sold by Perrigo.

109.    Plaintiffs also bring this action on behalf of themselves and as a class action under Fed. R. Civ. P. 23(a) and (b)(3), seeking damages, restitution, and equitable relief pursuant to state antitrust, consumer protection, and unjust enrichment laws, on behalf of the following class (the "Damages Class"):

> **Damages Class:** All persons who, during the Class Period, indirectly purchased Store-Brand infant formula in the Indirect

---

[22] February 1, 2022 is the date that PLD's complaint against Perrigo and Gerber was filed publicly on the docket. *See* PLD Action, ECF No. 44.

Purchaser States[23] for personal use and not for resale that was manufactured or sold by Perrigo.

110.     The Nationwide Class and Damages Class are referred to collectively as the "Classes" unless otherwise indicated.

111.     Specifically excluded from the Classes are Defendants and their officers, directors, employees, affiliates, legal representatives, heirs or assigns; federal and state governmental entities; any co-conspirator of Defendants; and any judicial officer presiding over this action and the members of his/her immediate family and judicial staff.

112.     **Numerosity**. Plaintiffs do not know the exact number of the members of the Classes. Due to the nature of the trade and commerce involved, Plaintiffs reasonably believe there are millions of members in each Class and that they are sufficiently numerous and geographically-dispersed throughout the United States so that joinder of all Class members would be impracticable.

113.     **Class Identity**. The Class members are ascertainable either from Defendants' records or through self-identification in the claims process.

114.     **Typicality**. Plaintiffs' claims are typical of other Class members' claims because they were injured through Defendants' uniform misconduct and paid supracompetitive prices for Store-Brand infant formula. Accordingly, by proving their own claims, Plaintiffs will necessarily prove the other Class members' claims.

115.     **Common Questions Exist and Predominate**. Common legal or factual questions exist as to all members of the Classes. This is particularly true given the nature of Defendants'

---

[23] The "Indirect Purchaser States" are each state in the United States as well as the District of Columbia, Puerto Rico, and the U.S. Virgin Islands.

unlawful anticompetitive conduct, which was and is applicable to the Classes as a whole. These questions include the following:

 a. Whether Defendants engaged in a combination or conspiracy to fix, raise, maintain, and/or stabilize the price of Store-Brand infant formula sold in the United States and in each of the relevant states;

 b. The duration of such combination or conspiracy and the nature and character of the acts carried out by Defendants in furtherance of the combination or conspiracy;

 c. Whether such combination or conspiracy violated Section 1 of the Sherman Act;

 d. Whether such combination or conspiracy violated Section 2 of the Sherman Act;

 e. Whether such combination or conspiracy had the effect of artificially inflating the price of Store-Brand infant formula sold in the United States and in each of the relevant states during the Class Period;

 f. Whether the alleged conspiracy violated the relevant states' antitrust or consumer protection laws;

 g. Whether Perrigo abused its monopoly power in the Relevant Market to gain a competitive advantage in violation of Section 2 of the Sherman Act;

 h. Whether Defendants unjustly enriched themselves to the detriment of the Plaintiffs and the Damages Class;

 i. Whether Defendants' conduct caused injury to Plaintiffs and the Classes;

 j. Whether Defendants took actions to conceal their unlawful conspiracy;

    k.   The appropriate injunctive and related equitable relief for the Classes; and

    l.   The measure and amount of damages incurred by the Damages Class.

116.   **Adequacy**. Plaintiffs can and will fairly and adequately represent and protect the Class members' interests and have no interests that conflict with or are antagonistic to those of the Classes. Moreover, Plaintiffs' attorneys are highly capable and experienced in antitrust and class action litigation.

117.   **Superiority**. Class action treatment is the superior procedural vehicle for the fair and efficient adjudication of the claims asserted because, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that it might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

118.   The prosecution of separate actions by individual members of the Classes would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

119.   Defendants have acted on grounds generally applicable to the Classes, thereby making final injunctive relief appropriate with respect to the Classes as a whole.

## **ANTITRUST INJURY**

120.   Defendants' anticompetitive conduct had the following effects, among others:

    a.   Price competition has been restrained or eliminated with respect to Store-Brand infant formula.

b. The prices of Store-Brand infant formula have been fixed, raised, stabilized, or maintained at artificially inflated levels;

c. Purchasers of Store-Brand infant formula have been deprived of free and open competition; and

d. Indirect purchasers of Store-Brand infant formula, including Plaintiffs and members of the Classes, paid artificially inflated prices.

121.   Throughout the Class Period, Plaintiffs and the Classes indirectly purchased Perrigo-manufactured Store-Brand infant formula in the United States for personal use and not for resale.

122.   As a direct and proximate result of the alleged violations of the antitrust laws, Plaintiffs and the Classes have sustained injury to their property, having paid higher prices for Store-Brand infant formula than they would have paid in the absence of Defendants' illegal contract, combination, or conspiracy, and, as a result, have suffered damages in an amount presently undetermined. This is the type of injury that the antitrust laws were meant to punish and prevent.

123.   It is well recognized that in a multi-level chain of distribution, such as exists here, an overcharge is felt throughout the chain of distribution. As noted, antitrust scholar Professor Herbert Hovenkamp stated in his treatise, FEDERAL ANTITRUST POLICY, THE LAW OF COMPETITION AND ITS PRACTICE 564 (1994):

> A monopoly overcharge at the top of a distribution chain generally results in higher prices at every level below. For example, if production of aluminum is monopolized or cartelized, fabricators of aluminum cookware will pay higher prices for aluminum. In most cases they will absorb part of these increased costs themselves and pass part along to cookware wholesalers. The wholesalers will charge higher prices to the retail stores, and the stores will do it once again to retail consumers. Every person at

26

every stage in the chain likely will be poorer as a result of the
monopoly price at the top.

124.    Here, while the direct purchasers (Retailers) were the first to pay supracompetitive
prices, some or all of the overcharge was passed along the distribution chain and absorbed by
Plaintiffs and the Classes when they purchased Store-Brand infant formula from Retailers.

125.    Commonly used and well-accepted economic models can be applied to measure
both the extent and the amount of the supracompetitive charges passed through the chain of
distribution. Thus, the economic harm to Plaintiffs and the Damages Class can be quantified.

126.    The purpose of Defendants' conspiratorial conduct was to raise, fix, or maintain the
prices of Store-Brand infant formula and, as a direct and foreseeable result, Plaintiffs and the
Classes paid supracompetitive prices for Store-Brand infant formula during the Class Period.

127.    By reason of the alleged violations of the antitrust laws, Plaintiffs and the Classes
have sustained injury to their property, having paid higher prices for Store-Brand infant formula
than they would have paid in the absence of Defendants' illegal conduct, and as a result have
suffered damages.

**COUNT I**
**Violation of the Sherman Act, Section 1, 15 U.S.C. § 1**
**(On Behalf of the Nationwide Class for Injunctive and Equitable Relief)**
**(Against all Defendants)**

128.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every
allegation set forth in the preceding paragraphs of this Complaint.

129.    Beginning in at least 2021, and continuing thereafter to the present, Defendants, by
and through their officers, directors, employees, agents, or other representatives, have colluded to
prevent PLD and other rivals from entering the Relevant Market to supply Retailers with Store-
Brand infant formula in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

27

130.    Plaintiffs and the Nationwide Class have been injured in their property by reason of Defendants' unlawful combination, contract, conspiracy, and agreement. Plaintiffs and the Nationwide Class have paid more for Store-Brand infant formula than they otherwise would have paid in the absence of Defendants' collusive conduct. This injury is of the type the federal antitrust laws were designed to prevent, and flows from Defendants' unlawful conduct.

131.    Through the Anticompetitive Agreement, and their subsequent conduct, including Perrigo's purchase of the Gateway Plant, Defendants kept PLD and other rivals out of the Relevant Market, which maintained the supracompetitive prices that Plaintiffs and the Nationwide Class paid for Store-Brand infant formula.

132.    Plaintiffs and the Nationwide Class have been injured, and will continue to be injured, by paying more for Store-Brand infant formula than they would have paid, and will continue to pay, in the absence of the combination and conspiracy as alleged herein.

133.    Plaintiffs and the Nationwide Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

134.    Plaintiffs and the Nationwide Class have suffered irreparable injury that remedies at law are inadequate to compensate.

135.    The balance of hardships supports issuing injunctive relief, and the public interest is not disserved by a permanent injunction.

**COUNT II**
**Violation of the Sherman Act, Section 2, 15 U.S.C. § 2**
**(On Behalf of the Nationwide Class for Injunctive and Equitable Relief)**
**(Against Perrigo)**

136.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

137.    Perrigo has at all relevant times had monopoly power in the Relevant Market.

138.    Perrigo willfully and wrongfully obtained and maintained monopoly power by using restrictive or exclusionary conduct, rather than using greater business acumen, in violation of 15 U.S.C. § 2.

139.    Plaintiffs and the Nationwide Class have been injured and will continue to be injured by paying more for Store-Brand infant formula than they would have paid and will continue to pay in the absence of Perrigo's continuing exclusionary, anticompetitive conduct.

140.    Plaintiffs and the Nationwide Class are entitled to an injunction against Perrigo, preventing and restraining the violations alleged herein.

141.    Plaintiffs and the Nationwide Class have suffered irreparable injury that remedies at law are inadequate to compensate.

142.    The balance of hardships supports issuing permanent injunctive relief, and the public interest is not disserved by a permanent injunction.

**COUNT III**
**Violation of the Sherman Act, Section 2, 15 U.S.C. § 2**
**(On Behalf of the Nationwide Class for Injunctive and Equitable Relief)**
**(Against all Defendants)**

143.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

144.    Through the Anticompetitive Agreement to keep PLD and other rivals out of the Relevant Market, and their subsequent conduct, including Perrigo's purchase of the Gateway Plant, Defendants have illegally prevented a competitor from entering the Relevant Market for Store-Brand infant formula, and have combined and conspired to monopolize it in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

145.    Defendants entered into a conspiracy to monopolize the Relevant Market. Defendants acted with specific intent to achieve and confer the benefits of this unlawful monopoly

upon each other by engaging in multiple overt acts in furtherance of their conspiracy as detailed above.

146.    Plaintiffs and the Nationwide Class have been injured and will continue to be injured by paying more for Store-Brand infant formula than they would have paid and will continue to pay in the absence of the combination and conspiracy as alleged herein.

147.    Plaintiffs and the Nationwide Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

148.    Plaintiffs and the Nationwide Class have suffered irreparable injury that remedies at law are inadequate to compensate.

149.    The balance of hardships supports issuing permanent injunctive relief, and the public interest is not disserved by a permanent injunction.

**COUNT IV**
**Violation of State Antitrust Statutes**
**(On Behalf of the Plaintiffs and the Damages Class)**

150.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

151.    Defendants engaged in unfair competition, or unfair, unconscionable, deceptive, or fraudulent acts or practices in violation of the state unfair competition statutes listed below.

152.    **California.** Defendants have entered into an unlawful agreement in restraint of trade in violation of Cal. Bus. & Prof Code §§ 16270, *et seq.*, with respect to purchases of Store-Brand infant formula in California by Damages Class members and/or purchases by California residents.

      a.    During the Class Period, Defendants marketed, sold, or distributed Store-Brand infant formula in California, and committed and continue to commit acts of unfair competition, as defined by Sections 16720, *et seq.* of the

30

California Business and Professions Code, by engaging in the acts and practices specified above.

b. The aforesaid violations of Section 16720, *et seq.*, California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among Defendants, the substantial terms of which were to prevent competition in the market for Store-Brand infant formula.

c. For the purpose of forming and effectuating the unlawful trust, Defendants have done those things which they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth above.

d. The combination and conspiracy alleged herein has had, *inter alia,* the following effects: (1) competition in the sale of Store-Brand infant formula has been restrained, suppressed, and/or eliminated in the State of California; (2) prices for Store-Brand infant Formula sold by Perrigo have been fixed, raised, stabilized, and pegged at artificially high, non-competitive levels in the State of California and throughout the United States; and (3) those who purchased Store-Brand infant formula directly or indirectly from Perrigo have been deprived of the benefit of free and open competition.

e. As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their property in that they paid more for Store-Brand infant formula than they otherwise would have paid in the absence of Defendants' unlawful conduct. As a result of Defendants' violation of Section 16720, *et seq.* of the California Business and

Professions Code, members of the Damages Class seek treble damages and their cost of suit, including a reasonable attorneys' fee, pursuant to Section 16750(a) of the California Business and Professions Code.

153.   **Illinois.** Defendants have entered into an unlawful agreement in restraint of trade in violation of the Illinois Antitrust Act, 740 Ill. Comp. Stat. § 10/1, *et seq.* with respect to purchases of Store-Brand infant formula in Illinois by Damages Class members and/or purchases by Illinois residents.

a.   Defendants' combination or conspiracy had the following effects: (i) Store-Brand infant formula price competition was restrained, suppressed, and eliminated throughout Illinois; (2) Store-Brand infant formula prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Illinois; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supracompetitive, artificially inflated prices for Store-Brand infant formula.

b.   During the Class Period, Defendants' illegal conduct substantially affected Illinois commerce.

c.   As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their property and are threatened with further injury.

d.   By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of 740 Ill. Comp. Stat. § 10/3. Accordingly, members of the Damages Class seek all relief available under 740 Ill. Comp. Stat. § 10/1, *et seq.*

154.   **Michigan.** Defendants have entered into an unlawful agreement in restraint of trade in violation of Mich. Comp. Laws Ann. § 445.771, *et seq.* with respect to purchases of Store-Brand infant formula in Michigan by Damages Class members and/or purchases by Michigan residents.

   a.   Defendants' combination or conspiracy had the following effects: (i) Store-Brand infant formula price competition was restrained, suppressed, and eliminated throughout Michigan; (2) Store-Brand infant formula prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Michigan; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supracompetitive, artificially inflated prices for Store-Brand infant formula.

   b.   During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce.

   c.   As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their property and are threatened with further injury.

   d.   By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws Ann. § 445.772. Accordingly, members of the Damages Class seek all relief available under Michigan Comp. Laws Ann. § 445.771, *et seq.*

155.   **Minnesota.** Defendants have entered into an unlawful agreement in restraint of trade in violation of Minn. Stat. § 325D.51, *et seq.* with respect to purchases of Store-Brand infant formula in Minnesota by Damages Class members and/or purchases by Minnesota residents.

a.  Defendants' combination or conspiracy had the following effects: (i) Store-Brand infant formula price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) Store-Brand infant formula prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Minnesota; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supracompetitive, artificially inflated prices for Store-Brand infant formula.

b.  During the Class Period, Defendants' illegal conduct substantially affected Minnesota commerce.

c.  As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their property and are threatened with further injury.

d.  By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. § 325D.51, *et seq*. Accordingly, members of the Damages Class seek all relief available under Minnesota Stat. § 325D.51, *et seq*.

156.  **Nebraska.** Defendants have entered into an unlawful agreement in restraint of trade in violation of Neb. Code Ann. § 59-801, *et seq*. with respect to purchases of Store-Brand infant formula in Nebraska by Damages Class members and/or purchases by Nebraska residents.

a.  Defendants' combination or conspiracy had the following effects: (i) Store-Brand infant formula price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) Store-Brand infant formula prices were raised, fixed, maintained, and stabilized at artificially high levels

34

throughout Nebraska; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supracompetitive, artificially inflated prices for Store-Brand infant formula.

b. During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce.

c. As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their property and are threatened with further injury.

d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Neb. Code Ann. § 59-801, *et seq.* Accordingly, members of the Damages Class seek all relief available under Neb. Code Ann. § 59-801, *et seq.*

157.   **New York.**  Defendants have entered into an unlawful agreement in restraint of trade in violation of N.Y. Gen. Bus. Law § 340 *et seq.* with respect to purchases by New York residents.

a. Defendants' combination or conspiracy had the following effects: (i) Store-Brand infant formula price competition was restrained, suppressed, and eliminated throughout New York; (2) Store-Brand infant formula prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supracompetitive, artificially inflated prices for Store-Brand infant formula.

b. During the Class Period, Defendants' illegal conduct substantially affected New York commerce.

c. As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their property and are threatened with further injury.

d. By reason of the foregoing, Defendants have entered into agreements in the restraint of trade in violation of N.Y. Gen. Bus. Law § 340 *et seq*. Accordingly, members of the Damages Class seek all relief available under N.Y. Gen. Bus. Law § 340 *et seq*.

158. **North Carolina.** Defendants have entered into an unlawful agreement in restraint of trade in violation of N.C. Gen. Stat. § 75-1, *et seq.* with respect to purchases of Store-Brand infant formula in North Carolina by Damages Class members and/or purchases by North Carolina residents.

a. Defendants' combination or conspiracy had the following effects: (i) Store-Brand infant formula price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) Store-Brand infant formula prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supracompetitive, artificially inflated prices for Store-Brand infant formula.

b. During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce.

c.   As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their property and are threatened with further injury.

d.   By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of N.C. Gen. Stat. § 75-1, *et seq.* Accordingly, members of the Damages Class seek all relief available under N.C. Gen. Stat. §§ 75-1, *et seq.*

159.   **Tennessee.** Defendants have entered into an unlawful agreement in restraint of trade in violation of Tenn. Code Ann. § 47-25-101, *et seq.* with respect to purchases of Store-Brand infant formula in Tennessee by Damages Class members and/or purchases by Tennessee residents.

a.   Defendants' combination or conspiracy had the following effects: (i) Store-Brand infant formula price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) Store-Brand infant formula prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Tennessee; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supracompetitive, artificially inflated prices for Store-Brand infant formula.

b.   During the Class Period, Defendants' illegal conduct substantially affected Tennessee commerce.

c.   As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their property and are threatened with further injury.

    d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Tenn. Code Ann. § 47-25-101, *et seq.* Accordingly, members of the Damages Class seek all relief available under Tenn. Code Ann. § 47-25-101, *et seq.*

160. **Virginia.** Defendants have entered into an unlawful agreement in restraint of trade in violation of Va. Stat. § 59.1-9.1, *et seq.* with respect to purchases of Store-Brand infant formula in Virginia by Damages Class members and/or purchases by Virginia residents.

    a. Defendants' combination or conspiracy had the following effects: (i) Store-Brand infant formula price competition was restrained, suppressed, and eliminated throughout Virginia; (2) Store-Brand infant formula prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Virginia; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supracompetitive, artificially inflated prices for Store-Brand infant formula.

    b. During the Class Period, Defendants' illegal conduct substantially affected Virginia commerce.

    c. As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their property and are threatened with further injury.

    d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Va. Stat. § 59.1-9.1, *et seq.* Accordingly, members of the Damages Class seek all relief available under Va. Stat. § 59.1-9.1, *et seq.*

## COUNT V
### Violation of State Consumer Protection Statutes
### (On Behalf of the Plaintiffs and the Damages Class)

161.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every

allegation set forth in the preceding paragraphs of this Complaint.

162.    **Florida.**  Defendants have engaged in unfair competition or unfair, unconscionable,

deceptive or fraudulent acts or practices in violation of Fla. Stat. § 501.201, *et seq*. with respect to

purchases of Store-Brand infant formula in Florida by Damages Class members and/or purchases

by Florida residents.

  a.  Defendants' unlawful conduct had the following effects: (i) Store-Brand
    infant formula price competition was restrained, suppressed, and eliminated
    throughout Florida; (2) Store-Brand infant formula prices were raised,
    fixed, maintained, and stabilized at artificially high levels throughout
    Florida; (3) members of the Damages Class were deprived of free and open
    competition; and (4) members of the Damages Class paid supracompetitive,
    artificially inflated prices for Store-Brand infant formula.

  b.  During the Class Period, Defendants' illegal conduct substantially affected
    Florida commerce.

  c.  As a direct and proximate result of Defendants' unlawful conduct, members
    of the Damages Class have been injured in their property and are threatened
    with further injury.

  d.  By reason of the foregoing, Defendants' combination or conspiracy is an
    unfair method of competition under Fla. Stat. § 501.201, *et seq*.
    Accordingly, members of the Damages Class seek all relief available under
    Fla. Stat. § 501.201, *et seq.*

163. **Missouri.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent practices in violation Mo. Rev. Stat. § 407.010, *et seq.* with respect to purchases of Store-Brand infant formula in Missouri by Damages Class members and/or purchases by Missouri residents.

    a. Defendants' unlawful conduct had the following effects: (i) Store-Brand infant formula price competition was restrained, suppressed, and eliminated throughout Missouri; (2) Store-Brand infant formula prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Missouri; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supracompetitive, artificially inflated prices for Store-Brand infant formula.

    b. During the Class Period, Defendants' illegal conduct substantially affected Missouri commerce.

    c. As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their property and are threatened with further injury.

    d. By reason of the foregoing, Defendants' combination or conspiracy is an unfair method of competition under Mo. Rev. Stat. § 407.010, *et seq.* Accordingly, members of the Damages Class seek all relief available under Mo. Rev. Stat. § 407.010, *et seq.*

164. **New Hampshire.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of N.H. Rev. Stat. Ann. §

358-A:1, *et seq.* with respect to purchases of Store-Brand infant formula in New Hampshire by Damages Class members and/or purchases by New Hampshire residents.

    a. Defendants willingly and knowingly agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels with respect to purchases of Store-Brand infant formula in New Hampshire.

    b. Such conduct by the Defendants constituted "unconscionable trade practices," in violation of N.H. Rev. Stat. §358-A, 1, *et seq.*

    c. During the Class Period, Defendants' illegal conduct substantially affected New Hampshire commerce.

    d. Defendants' unfair method of competition had the following effects: (i) Store-Brand infant formula price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) Store-Brand infant formula prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Hampshire; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supracompetitive, artificially inflated prices for Store-Brand infant formula.

    e. As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their property and are threatened with further injury.

    f. By reason of the foregoing, Defendants' combination or conspiracy is an unfair method of competition under N.H. Rev. Stat. Ann. § 358-A:1, *et seq.*

Accordingly, members of the Damages Class seek all relief available under N.H. Rev. Stat. Ann. § 358-A:1, *et seq*.

165. **South Carolina.** Defendants have entered into an unlawful agreement in restraint of trade in violation of S.C. Code Ann. § 39-5-10, *et seq*. with respect to purchases of Store-Brand infant formula in South Carolina by Damages Class members and/or purchases by South Carolina residents.

    a. Defendants' unfair method of competition had the following effects: (i) Store-Brand infant formula price competition was restrained, suppressed, and eliminated throughout South Carolina; (2) Store-Brand infant formula prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Carolina; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supracompetitive, artificially inflated prices for Store-Brand infant formula.

    b. During the Class Period, Defendants' illegal conduct had a substantial effect on South Carolina commerce.

    a. As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their property and are threatened with further injury.

    b. By reason of the foregoing, Defendants' combination or conspiracy is an unfair method of competition under S.C. Code Ann. §§ 39-5-10, *et seq*. Accordingly, members of the Damages Class seek all relief available under S.C. Code Ann. §§ 39-5-10, *et seq*.

## COUNT VI
### Unjust Enrichment
### (On Behalf of Plaintiffs and the Damages Class)

166.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

167.    As a result of their unlawful conduct described above, Defendants have and will continue to be unjustly enriched by the receipt of, at a minimum, unlawfully inflated prices and unlawful profits on sales of Store-Brand infant formula.

168.    Defendants have benefited from their unlawful acts and it would be inequitable, based on unjust enrichment principles under the laws of each state in the United States as well as the District of Columbia, Puerto Rico, and the U.S. Virgin Islands to be permitted to retain any of the ill-gotten gains resulting from the overpayments made by Plaintiffs or the members of the Damages Class for Store-Brand infant formula.

169.    Plaintiffs and the Damages Class are entitled to the amount of Defendants' ill-gotten gains resulting from their unlawful, unjust, and inequitable conduct. Plaintiffs and the Damages Class are entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiffs and the members of the Damages Class may make claims on a pro rata basis.

170.    As a result of their unlawful conduct described above, Defendants have and will continue to be unjustly enriched by the receipt of unlawfully inflated prices and unlawful profits from Defendants' sales of Store-Brand infant formula.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Classes, respectfully request judgment against Defendants as follows:

(1)     That the Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2), and (b)(3) of the Fed. R. Civ. P., appoint Plaintiffs as Class Representatives and its counsel of record as Class Counsel, and direct that notice of this action, as provided by Rule 23(c)(2) of the Fed. R. Civ. P., be given to the Classes, once certified;

(2)     That the unlawful conduct, conspiracy, or combination alleged herein be adjudged and decreed:

    a.   An unreasonable restraint of trade or commerce in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2;

    b.   An unlawful combination, trust, agreement, understanding, and/or concert of action in violation of the state antitrust and unfair competition laws as set forth herein; and

    c.   Acts of unjust enrichment by Defendants as set forth herein;

(3)     That Plaintiffs and the Damages Class recover damages and any other relief, to the maximum extent allowed under the applicable state laws, and that joint and several judgments in favor of Plaintiffs and the Damages Class be entered against Defendants in an amount to be trebled to the extent such laws permit;

(4)     That Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining or renewing the conduct, conspiracy, or combination alleged herein, or from entering into any other conspiracy or combination having a similar purpose or effect, and from

adopting or following any practice, plan, program, or device having a similar purpose or effect;

(5)     That Plaintiffs and the Damages Class be awarded pre-and post-judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of the Complaint;

(6)     That Plaintiffs and the Classes recover their costs of suit, including reasonable attorneys' fees, as provided by law; and

(7)     That Plaintiffs and the Classes have such other and further relief as the case may require and the Court deems just and proper.

## TRIAL BY JURY DEMANDED

Plaintiffs demand a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, on all issues so triable.

Dated:  June 20, 2024                   Respectfully submitted,


By   */s/  Kevin J. Funk*
Wyatt B. Durrette, Jr., Esq. (VSB No. 04719)
Kevin J. Funk, Esq. (VSB No. 65465)
DURRETTE, ARKEMA, GERSON & GILL PC
Bank of America Center
1111 East Main Street, 16th Floor
Richmond, VA  23219
Tel: (804) 775-6900
Fax: (804) 775-6911
wdurrette@dagglaw.com
kfunk@dagglaw.com

*Interim Liaison Counsel for the Proposed Classes*

Simon B. Paris (*pro hac vice*)
Patrick Howard (*pro hac vice*)
SALTZ MONGELUZZI AND BENDESKY PC
120 Gibraltar Road, Suite 218
Horsham, PA  19044
Tel: (215) 575-3895
sparis@smbb.com
phoward@smbb.com

Michael J. Boni (*pro hac vice*)
Joshua D. Snyder (*pro hac vice*)
John E. Sindoni (*pro hac vice*)
Benjamin J. Eichel (*pro hac vice*)
BONI, ZACK & SNYDER LLC
15 St. Asaphs Road
Bala Cynwyd, PA  19004
Tel: (610) 822-0200
mboni@bonizack.com
jsnyder@bonizack.com
jsindoni@bonizack.com
beichel@bonizack.com

Jeffrey J. Corrigan (*pro hac vice* )
Jeffrey L. Spector (*pro hac vice*)
SPECTOR ROSEMAN & KODROFF, P.C.
Two Commerce Square
2001 Market Street, Suite 3420
Philadelphia, PA  19103
Tel: (215) 496-0300
jcorrigan@srkattorneys.com
jspector@srkattorneys.com

*Interim Co-Lead Counsel for the Proposed Classes*

Roberta D. Liebenberg (*pro hac vice*)
Gerard A. Dever (*pro hac vice*)
FINE, KAPLAN & BLACK, R.P.C.
One South Broad Street, 23rd Floor
Philadelphia, PA  19107
Tel: (215) 567-6565
rliebenberg@finekaplan.com
gdever@finekaplan.com

Jeffrey B. Gittleman
Meghan J. Talbot
Zachary Pogust
POGUST GOODHEAD LLC
Eight Tower Bridge, Suite 250
161 Washington Street
Conshohocken, PA 19428
Tel: 610-941-4204
jgittleman@pogustgoodhead.com
mtalbot@pogustgoodhead.com
zpogust@pogustgoodhead.com

Daniel E. Gustafson
Michelle J. Looby
Abou B. Amara, Jr.
GUSTAFSON GLUEK PLLC
120 S. Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: 612-333-8844
dgustafson@gustafsongluek.com
mlooby@gustafsongluek.com
aamara@gustafsongluek.com

W. Joseph Bruckner
Brian D. Clark
Rebecca A. Peterson
LOCKRIDGE GRINDAL NAUEN PLLP
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Tel: 612-339-6900
wjbruckner@locklaw.com
bdclark@locklaw.com
rapeterson@locklaw.com

Daniel L. Warshaw
Bobby Pouya
PEARSON WARSHAW, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Tel: 818-788-8300
dwarshaw@pwfirm.com
bpouya@pwfirm.com

Dianne M. Nast
Daniel N. Gallucci
Michele S. Burkholder
Michael S. Tarringer
NASTLAW LLC
1101 Market Street, Suite 2801
Philadelphia, Pennsylvania 19107
Tel: 215-923-9300
dnast@nastlaw.com
dgallucci@nastlaw.com
mburkholder@nastlaw.com
mtarringer@nastlaw.com

*Counsel for Plaintiffs and the Proposed Classes*

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of June, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically email notification of such filing to all counsel of record.

To the best of my knowledge, there are no other attorneys or parties who require service by U.S. Mail.

  */s/  Kevin J. Funk*_____
Kevin J. Funk, Esquire (VSB No. 65465)
DURRETTE, ARKEMA, GERSON & GILL PC
1111 East Main Street, 16th Floor
Richmond, VA  23219
Tel: (804) 775-6900
Fax:  (804) 775-6911
kfunk@dagglaw.com