**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

THOMAS CONRY, BRITTANY
CAMERON, KELSEY DAKER, KATHRYN
FOLLETT, CHRISTINA HALL, DANIELLE
HARRIS, CAREY LAVELLEE, AMY
MOORE, ASHLEY OROZCO, JESSICA
PATRICH, HAILEY RONAYNE, NICOLE
SATTERLY, SYDNEY SEGRETTO,
ROBYN SUSSMAN, LAILA VOLLE, and
SAMANTHA ZOMER, individually and on
behalf of all others similarly situated,

                            Plaintiffs,

        v.

GERBER PRODUCTS COMPANY,
PERRIGO COMPANY PLC, L. PERRIGO
COMPANY, and PBM NUTRITIONALS,
LLC,

                         Defendants.

Civil Action No. 1:24-cv-06784

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
<u>FIRST AMENDED CLASS ACTION COMPLAINT</u>**

## TABLE OF CONTENTS

I.      Introduction .................................................................................................... 1

II.     Factual Background ......................................................................................... 2

        A.      Overview of the Action. .................................................................... 2

        B.      Infant Formula Manufacturers. ......................................................... 2

        C.      The Relevant Market for Formula. .................................................... 3

        D.      Defendants Precluded PLD from Competing in the Formula Market. .................. 3

        E.      Defendants' Conspiracy Damaged Plaintiffs. ................................... 4

III.    Legal Standard ................................................................................................ 4

IV.     Argument ........................................................................................................ 5

        A.      Plaintiffs Have Standing to Bring Federal Antitrust Claims. ............ 5

                1.      Plaintiffs Allege Antitrust Injury. ......................................... 5

                2.      Plaintiffs Are Efficient Enforcers of the Antitrust Laws. ............ 8

        B.      Plaintiffs Have Article III Standing. ................................................ 10

        C.      Plaintiffs Allege Ongoing Harm Warranting Injunctive Relief ........... 13

        D.      The Complaint States a Federal Antitrust Claim. ............................ 15

                1.      Plaintiffs Properly Define the Relevant Market ..................... 15

                2.      Plaintiffs Allege Defendants Substantially Foreclosed PLD from the
                        Relevant Market ................................................................. 17

        E.      Plaintiffs' Claims Under State Law Should Proceed. ...................... 19

                1.      State Antitrust Laws ........................................................... 19

                2.      State Consumer Protection Laws ....................................... 19

                3.      Illinois and South Carolina ................................................ 20

                4.      State Unjust Enrichment Laws ........................................... 21

a) Plaintiffs Have Standing to Pursue Unjust Enrichment Claims on Behalf of Class Members in States in which They Do Not Reside...........................................................................................21

b) Plaintiffs Adequately Allege Unjust Enrichment Claims..............21

c) Plaintiffs State Unjust Enrichment Claims Even in States that Have not Passed *Illinois Brick* Repealer Laws. ...........................22

d) Plaintiffs State Unjust Enrichment Claims Under New York and California Law........................................................................24

V. Conclusion .........................................................................................25

## **TABLE OF AUTHORITIES**

**Cases**

*Adams v. Watson*, 10 F.3d 915 (1st Cir. 1993) .........................................................11, 12

*Allianz Glob. Invs. GmbH v. Bank of Am. Corp.*, 463 F. Supp. 3d 409 (S.D.N.Y. 2020) ......... 8, 21

*Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162 (2d Cir. 2012)...................................... 5

*Assoc. Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983) ................ 5, 8

*Barry's Cut Rate Stores Inc. v. Visa, Inc.*, 2019 WL 7584728 (E.D.N.Y. Nov. 20, 2019) ........... 13

*Baur v. Veneman*, 352 F.3d 625 (2d Cir. 2003) ............................................................. 10

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)...................................................... 4

*Blue Cross & Blue Shield of Vermont v. Teva Pharm. Indus., Ltd.*, 712 F. Supp. 3d 499 (D. Vt. 2024) ...................................................................................... 20, 22

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977)............................................ 6

*California v. ARC Am. Corp.*, 490 U.S. 93 (1989)............................................................. 7

*Carefirst of Maryland, Inc. v. Johnson & Johnson*, 2024 WL 3858249 (E.D. Va. Aug. 16, 2024)................................................................................... 23

*Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104 (1986) ................................................... 5

*Carter v. HealthPort Techs., LLC*, 822 F.3d 47 (2d Cir. 2016)..................................................... 10

*Connecticut v. Am. Elec. Power Co., Inc.*, 582 F.3d 309 (2d Cir. 2009) *rev'd on other grounds*, 564 U.S. 410 (2011) ...........................................................................................11

*Contant v. Bank of Am. Corp.*, 2018 WL 5292126 (S.D.N.Y. Oct. 25, 2018)............................... 14

*DeSimone v. Select Portfolio Servicing, Inc.*, 2024 WL 4188851 (E.D.N.Y. Sept. 13, 2024)...... 21

*Dickson v. Microsoft*, 309 F.3d 193 (4th Cir. 2002) ...................................................... 16

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) ................................................ 14

*Ford v. Rensselaer Polytechnic Inst.*, 507 F. Supp. 3d 406 (N.D.N.Y. 2020) ............................... 24

*FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*, 2017 WL 360042 (S.D.N.Y. Aug. 18, 2017) ....................................................................................... 10

*Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*, 711 F.3d 68 (2d Cir. 2013) .............................. 5, 24

*Gelboim v. Bank of Am. Corp.*, 823 F.3d 759 (2d Cir. 2016) ...................................................... 6, 8

*Ghirardo v. Antonioli*, 924 P.2d 996 (1996) ........................................................................... 24

*Gibson v. Bartlett Dairy, Inc.*, 2022 WL 784746 (E.D.N.Y. Mar. 15, 2022) ................................ 21

*Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) ............................................................. 7, 22, 23

*In re Aggrenox Antitrust Litig.*, 2016 WL 4204478 (D. Conn. Aug. 9, 2016) .............................. 20

*In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d 151 (2d Cir. 2016) .................................. 6

*In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772 (N.D. Ill. 2017) ............................ 9, 20

*In re Credit Default Swaps Antitrust Litig.*, 2014 WL 4379112 (Sept. 4, 2014, S.D.N.Y.) .......... 21

*In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677 (2d Cir. 2009) ............................ 5, 9

*In re Dealer Mgmt. Sys. Antitrust Litig.*, 680 F. Supp. 3d 919 (N.D. Ill. 2023) ............................ 20

*In re Ductile Iron Pipe Fittings (DIPF) Direct Purchaser Antitrust Litig.*, 2013 WL 812143
    (D.N.J. Mar. 5, 2013) ........................................................................................................... 18

*In re Generic Pharms. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814 (E.D. Pa. 2019) ........... 22, 23

*In re G-Fees Antitrust Litig.*, 584 F. Supp. 2d 26 (D.D.C. 2008) ................................................. 23

*In re Int. Rate Swaps Antitrust Litig.*, 261 F. Supp. 3d 430 (S.D.N.Y. 2017) .............................. 10

*In re K-Dur Antitrust Litig.*, 686 F.3d 197 (3d Cir. 2012) ........................................................... 22

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 383 F. Supp. 3d 187 (S.D.N.Y.
    2019) .................................................................................................................................... 9, 22

*In re Nameda Indirect Purchaser Antitrust Litig.*, 2021 WL 2403727 (S.D.N.Y. June 11, 2021) 24

*In re Opana Er Antitrust Litig.*, 2016 WL 4245516 (N.D. Ill. Aug. 11, 2016) ............................ 23

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2024 WL 1014159
    (E.D.N.Y. Mar. 8, 2024) ........................................................................................................ 8

*In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, 940 F. Supp. 2d 367 (E.D. La. 2013) ............... 16

*In re Pork Antitrust Litig.*, 495 F. Supp. 3d 753 (D. Minn. 2020) .......................................... 20, 24

*In re Propranolol Antitrust Litig.*, 249 F. Supp. 3d 712 (S.D.N.Y. Apr. 6, 2017) ............... 9, 10, 21

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 355 F. Supp. 3d 145
    (E.D.N.Y. 2018) ..................................................................................................................... 7

*In re Surescripts Antitrust Litig.*, 608 F. Supp. 3d 629 (N.D. Ill. 2022) ........................................ 17

*King Drug Co. of Florence v. Cephalon, Inc.*, 702 F. Supp. 2d 514 (E.D. Pa. 2010) ................... 22

*Langan v. Johnson & Johnson Consumer Co., Inc.*, 897 F.3d 88 (2d Cir. 2018) ......................... 21

*Mayor & City Council of Baltimore v. Merck Sharp & Dohme Corp.*, 2023 WL 8018980 (E.D. Pa. Nov. 20, 2023) ........................................................................................................................ 19

*Miami Prods. & Chem. Co. v. Olin Corp.*, 546 F. Supp. 3d 223 (W.D.N.Y. 2021) ............ 8, 13, 20

*New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638 (2d Cir. 2015)............................... 6

*Nicosia v. Amazon.com, Inc.*, 834 F.3d 220 (2d Cir. 2016)............................................................ 14

*Oliver v. American Express Co.*, No. 19-CV-566, 2020 WL 2079510 (E.D.N.Y. April 30, 2020) 11

*Osborn v. Visa Inc.*, 797 F.3d 1057 (D.C. Cir. 2015) .................................................................... 12

*P & L Dev., LLC v. Gerber Prod. Co.*, 715 F. Supp. 3d 435 (E.D.N.Y. 2024)................. 1, 2, 4, 17

*Paycom Billing Servs., Inc. v. Mastercard Int'l, Inc.*, 467 F.3d 283 (2d Cir. 2006)...................... 9

*Power Analytics Corp v. Operation Tech., Inc.*, 2018 WL 10231437 (C.D. Cal. July 24, 2018) . 18

*ProSearch Plus, LLC v. VFM Leonardo, Inc.*, 2013 WL 6229141 (C.D. Cal. Dec. 2, 2013) ....... 18

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993).......................................................................... 14

*Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, plc*, 2018 WL 7197233 (S.D.N.Y. Dec. 26, 2018) .......................................................................................................................... 20, 24

*Serpa Corp. v. McWane, Inc.*, 199 F.3d 6 (1st Cir. 1999) ............................................................. 7

*Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*, 2020 WL 5211035 (E.D. Pa. Sept. 1, 2020) ............................................................................................................ 8

*Xerox Corp. v. Media Scis. Int'l, Inc.*, 511 F. Supp. 2d 372 (S.D.N.Y. 2007).............................. 17

**Statutes**

15 U.S.C. §§ 1, 2........................................................................................................................... 2

Ala. Code § 6-5-60(a) ................................................................................................................. 23

Conn. Gen. Stat. § 35-46a(1) ...................................................................................................... 23

Md. Code Com. Law § 11-209(b)(2)(i) ....................................................................................... 23

I.     **INTRODUCTION**

Plaintiffs'[1] First Amended Class Action Complaint ("Complaint") alleges the same core facts that P&L Development, LLC ("PLD") brought against Defendants Gerber Products Company, Perrigo Company, PLC, L. Perrigo Company, and PBM Nutritionals LLC. *See P & L Dev., LLC v. Gerber Prod. Co.*, 715 F. Supp. 3d 435 (E.D.N.Y. 2024) ("PLD Opinion"). Given the substantial overlap between the Complaint and PLD's allegations, Defendants were directed not to relitigate any issues already decided by the Court in the PLD Opinion. Oct. 11, 2024 Order Consolidating Actions. Unsurprisingly, Defendants attempt to persuade the Court to reach an outcome at odds with the PLD Opinion. *See* Memorandum in Support of Defendants' Motion to Dismiss Plaintiffs' First Amended Class Action Complaint ("Ds' Brief"). The Court should reject this attempt.

Defendants claim Plaintiffs lack standing. They do so, however, in the face of well-pleaded allegations that Plaintiffs are Defendants' targeted end-purchasers in the Store-Brand infant formula Market ("Formula Market" or "Relevant Market"), the same market Defendants unlawfully barred PLD from entering. Defendants also argue Plaintiffs' claims for injunctive relief should be dismissed despite allegations that their anticompetitive conduct, and resulting harm, is ongoing. Perrigo's monopoly in the market for Store-Brand infant formula ("Formula") has been further entrenched by (1) conspiring with Gerber to secure a first right to purchase all of Gerber's excess supply of Formula (the "Anticompetitive Agreement" at issue in the PLD Opinion and the Complaint), and then (2) acquiring Gerber's Wisconsin Gateway Plant.

---

[1] Plaintiffs include Thomas Conry (CA), Brittany Cameron and Kelsey Daker (IL), Kathryn Follett (NC), Christina Hall (SC), Danielle Harris (MO), Carey LaVellee (VA), Amy Moore (NE), Ashley Orozco (FL), Jessica Patrich (TN), Hailey Ronayne (MI), Nicole Satterly (NY), Sydney Segretto (IL), Robyn Sussman (PA), Laila Volle (NH), and Samantha Zomer (MN). Complaint ¶¶ 14-29.

Plaintiffs have standing to seek (1) damages for Defendants' supercompetitive prices, and (2) injunctive relief to foster competitive pricing going forward. And, consistent with the Court's analysis of federal antitrust claims in the PLD Opinion, Plaintiffs' state antitrust claims are properly pled, as are Plaintiffs' consumer protection and unjust enrichment claims.

## II.    FACTUAL BACKGROUND

### A.    Overview of the Action.

The Complaint closely tracks the factual allegations of PLD's complaint, which Defendants moved unsuccessfully to dismiss in the PLD Action. *See* PLD Opinion, 715 F. Supp. 3d at 447-52. Plaintiffs are indirect purchasers of Formula from Perrigo through U.S. Retailers since April 22, 2020. Complaint ¶ 1. The Gerber and Perrigo Defendants conspired to bar potential Perrigo competitor, PLD, from the Formula Market. *Id.* ¶¶ 7, 77-95; *see also* PLD Opinion, 715 F. Supp. 3d at 461-64. Defendants' Anticompetitive Agreement preserved Perrigo's monopoly in the Relevant Market, causing Plaintiffs and putative class members to pay supracompetitive prices for Formula. *Id.* ¶¶ 99-102. Plaintiffs seek (a) injunctive relief under Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, and (b) monetary relief under various state laws. *Id.* ¶¶ 13, 108-109, 128-170.

### B.    Infant Formula Manufacturers.

Following Perrigo's November 1, 2022 purchase of the Gerber "Good Start" brand and the Gateway Plant, three manufacturers account for 99% of all infant formula sold in the United States: Perrigo and two non-parties, Abbott Laboratories ("Abbott") and Mead Johnson & Company LLC ("Mead"). *Id.* ¶ 44. Abbott and Mead do not sell Formula to Retailers, but instead only sell infant formula under their national brands ("Branded" infant formula), i.e., Abbott's Similac and Mead's Enfamil. *Id.* ¶¶ 44, 96. Perrigo, the only manufacturer of Formula (*Id.* ¶ 45), sells it to Retailers for resale to consumers in more than 40,000 retail locations throughout the

United States. *Id.* ¶ 53. Perrigo's Formula sales generate hundreds of millions of dollars annually, including millions from its monopolistic pricing. *Id.* ¶ 52.

### C.    The Relevant Market for Formula.

The relevant product market is the market for Formula, and the relevant geographic market is the United States. *Id.* ¶¶ 43, 51. Formula is distinct from and not reasonably interchangeable with Branded infant formula. *Id.* ¶ 47. Formula is manufactured as equivalent to Branded formula products, but without the marketing expended by Branded formula manufacturers, which compete by spending millions of dollars annually on advertising to attract new parents to their Branded formula. *Id.* ¶ 48. Instead, Formula is sold at a discount to Retailers, who sell the product to consumers at prices much lower than Branded formula, while still making a profit. *Id.* ¶ 49. Branded formula is sold at prices at least 60% higher than Formula prices. *Id.*

On May 14, 2019, Perrigo's CEO described the market's high entry barriers as "significant" and having "high moats," while acknowledging the small number of manufacturers in the United States and that it had been "20 years since the FDA approved another." *Id.* ¶ 54. FDA regulatory approval of a new formula product is similar to securing approval of a new pharmaceutical and can take up to 5 years and cost more than $190 million. *Id.* ¶ 60.

### D.    Defendants Precluded PLD from Competing in the Formula Market.

Beginning in 2019, PLD—Perrigo's primary competitor for a broad range of over-the-counter pharmaceutical and consumer healthcare products—sought to enter the Formula Market, which would have materially lowered prices for Retailers and consumers. *Id.* ¶¶ 65-70. Because Branded formula manufacturers Abbott and Mead lacked capacity to expand their production, PLD sought to partner with Gerber, which had additional capacity. *Id.* ¶¶ 50, 71-73. After lengthy negotiations, PLD and Gerber signed a binding contract that would have enabled PLD to enter

the Formula Market. *Id.* ¶¶ 74-75.

After the contract was signed, PLD began marketing Formula to Retailers, including Walmart and Walgreens, to compete with Perrigo's Formula. *Id.* ¶¶ 82-83. Rather than honor the contract, which would have allowed PLD to launch competition in the Formula market, Gerber informed Perrigo about PLD's plans and then conspired with Perrigo to prevent PLD from entering the market. *Id.* ¶ 84. The conspiracy was carried out through Defendants' Anticompetitive Agreement, which gave Perrigo control over Gerber's excess capacity, *id.* ¶ 78, and Gerber a share of Perrigo's Formula profits. *Id.* ¶ 81.

PLD sued Perrigo and Gerber on September 28, 2021 (Case No. 21-cv-5382 (E.D.N.Y.)), alleging violations of the Sherman Act and New York law. On February 6, 2024, the Court denied Defendants' motion to dismiss. *See* PLD Opinion. In November 2022, Perrigo acquired Nestlé's Gateway Plant, and Gerber's Good Start infant formula brand for $110 million. *Id.* ¶ 96.

### E.    Defendants' Conspiracy Damaged Plaintiffs.

Defendants' Anticompetitive Agreement prevented price competition in the Formula Market, thereby artificially inflating Formula prices downstream. *Id.* ¶ 120. Some or all of the supracompetitive Formula prices paid by Retailers were passed on to Plaintiffs and the other class members. *Id.* ¶¶ 100, 124. Defendants have perpetuated the harm caused by their Anticompetitive Agreement with Perrigo's acquisition of the Gateway Plant *Id.* ¶¶ 96-98.

## III.    LEGAL STANDARD

"When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all well-pleaded factual allegations and must draw all reasonable inferences in plaintiff's favor." PLD Opinion, 715 F. Supp. 3d at 457. A complaint must be sustained if it alleges "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). At this stage, courts should not resolve fact-specific questions or decide among

competing "plausible" factual inferences. *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012).

## IV.    ARGUMENT

### A.    Plaintiffs Have Standing to Bring Federal Antitrust Claims.

Plaintiffs have standing to enforce Sections 1 and 2 of the Sherman Act if they suffered "antitrust injury" and are "proper plaintiff[s]" to bring suit. *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 110-11, n. 5 (1986). In making those determinations, courts must "evaluate the plaintiff's harm, the alleged wrongdoing by the defendants, and the relationship between them." *Assoc. Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 535 (1983). Plaintiffs must show (a) "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful," and (b) they are "efficient enforcers" of the antitrust laws. *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 688 (2d Cir. 2009).

#### 1.    Plaintiffs Allege Antitrust Injury.

Contrary to Defendants' arguments (Ds' Brief at 5-6), the injury Plaintiffs suffered, *i.e.*, inflated prices for Formula caused by Defendants' elimination of competition in that market, is quintessential antitrust injury. The Second Circuit "employ[s] a three-step process for determining whether a plaintiff has alleged antitrust injury." *Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*, 711 F.3d 68, 76 (2d Cir. 2013). First, the plaintiff must "identify the practice complained of and the reasons such practice is or might be anticompetitive." *Id.* Plaintiffs allege Defendants engaged in a conspiracy to maintain Perrigo's monopoly in the Formula Market through the Anticompetitive Agreement and Perrigo's acquisition of the Gateway Plant. Complaint ¶¶ 53, 77-81, 96-98. Second, the plaintiff must identify its injury. 711 F.3d at 76. Plaintiffs allege their injury in the form of supracompetitive prices for Formula that Retailers

passed on to them. Complaint ¶¶ 122-127. Third, the Court must compare the "anticompetitive effect of the specific practice at issue to the actual injury the plaintiff alleges." 711 F.3d at 76 (cleaned up). Plaintiffs' alleged injury of supracompetitive prices flows directly from Defendants' anticompetitive conduct in monopolizing the market to supply Retailers with Formula. *Id.* ¶¶ 100, 124-127, 130.

"Generally, when consumers, because of a conspiracy, must pay prices that no longer reflect ordinary market conditions, they suffer 'injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.'" *Gelboim v. Bank of Am. Corp.*, 823 F.3d 759, 772 (2d Cir. 2016) (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)). Moreover, when a monopolist takes action to prevent "one or more new or potential competitors from gaining a foothold in the market," such action "is not only injurious to the potential competitor but also to competition in general." *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 661 n. 35 (2d Cir. 2015) (citation omitted).

Defendants rely on *In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d 151, 158 (2d Cir. 2016) to argue that Plaintiffs did not participate directly in the market. (Ds' Brief at 5). Defendants both misconstrue the Complaint and misapply that case, which dealt with the "exceedingly complex … mechanics of the aluminum futures, warehousing, and distribution markets." 833 F.3d at 154. There, the plaintiffs were purchasers of aluminum and aluminum products, but the defendants were *not* manufacturers of aluminum products. *Id.* at 155-56. The warehouse defendants sold storage services, the trader defendants sold futures, and they allegedly conspired to manipulate a price component for a particular geographic area. *Id.* at 153-55. Unlike Plaintiffs here, the *Aluminum Warehousing* plaintiffs "disavow[ed] participation in any of the markets in which the defendants operate[d]." *Id.* at 161. The Second Circuit held that

there was no antitrust injury because, unlike the present case, "the claim was suffered down the distribution chain of *a separate market*, and was a purely incidental byproduct of the alleged scheme." *Id.* at 162 (emphasis added).

Here, as end-purchasers of Defendants' products, Plaintiffs participate in the same market as Defendants. *See Aluminum Warehousing*, 833 F.3d at 158 ("Competitors and consumers in the market where trade is allegedly restrained are presumptively the proper plaintiffs to allege antitrust injury.") (quoting *Serpa Corp. v. McWane, Inc*., 199 F.3d 6, 10 (1st Cir. 1999)). There is no complexity in the Formula Market comparable to the markets at issue in *Aluminum Warehousing*. As a monopolist, Perrigo sold Formula to Retailers at higher prices than if it had faced competition. Complaint ¶¶ 70, 124. Retailers then passed along those overcharges to Plaintiffs and class members by reselling the exact same Formula at higher prices than would have existed in a competitive market. *Id.* ¶ 125. Rather than being a "purely incidental byproduct of the alleged scheme," Plaintiffs' injury was the direct and foreseeable result of Defendants' scheme.

Drawn to its logical conclusion, Defendants' argument would eliminate all indirect purchaser claims for injunctive relief under the Sherman Act, which is plainly not the law. Although indirect purchasers are barred under *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), from recovering damages under federal antitrust law, "courts have consistently allowed indirect purchasers to advance claims for injunctive relief" under the Clayton Act.[2] *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2024 WL 1014159, at *9 (E.D.N.Y. Mar. 8,

---

[2] As discussed in Section IV.E, indirect purchasers may also sue for damages under state law. *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 355 F. Supp. 3d 145, 150 (E.D.N.Y. 2018) ("[T]he Supreme Court has recognized that, although federal antitrust law does not permit indirect purchasers to recover damages, neither does it preempt state antitrust statutes that do so." (citing *California v. ARC Am. Corp.*, 490 U.S. 93, 105-06 (1989)).

2024); *see, e.g.*, *Miami Prods. & Chem. Co. v. Olin Corp.*, 546 F. Supp. 3d 223, 248-49 (W.D.N.Y. 2021) (denying motion to dismiss indirect purchaser action for injunctive relief); *Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*, 2020 WL 5211035, at *14 (E.D. Pa. Sept. 1, 2020) (ruling plaintiff "as an indirect purchaser, does have standing to sue for injunctive relief").

### 2. Plaintiffs Are Efficient Enforcers of the Antitrust Laws.

"The four efficient enforcer factors are: (1) the 'directness or indirectness of the asserted injury,' which requires evaluation of the 'chain of causation' linking [plaintiffs'] asserted injury and the" defendants' conduct; "'(2) the existence of more direct victims of the alleged conspiracy'; (3) the extent to which [plaintiffs'] damages claim[s] [are] 'highly speculative'; and (4) the importance of avoiding 'either the risk of duplicate recoveries on the one hand, or the danger of complex apportionment of damages on the other.'" *Gelboim*, 823 F.3d at 778 (quoting *Associated Gen. Contractors*, 459 U.S. at 540-45). Defendants argue Plaintiffs lack standing under the first two factors (while acknowledging the latter two factors are inapplicable to claims for injunctive relief). (Ds' Brief at 6).

First, in arguing that Plaintiffs' injury is not direct, Defendants conflate the indirect purchaser doctrine under *Illinois Brick* with the directness inquiry under *Associated Gen. Contractors*. (Ds' Brief at 7). In the present context, "directness" means "close in the chain of causation," and Plaintiffs are not "insufficiently direct under the efficient enforcer inquiry" merely because they "did not transact directly with defendants." *Allianz Glob. Invs. GmbH v. Bank of Am. Corp.*, 463 F. Supp. 3d 409, 422–23 (S.D.N.Y. 2020) (citations omitted).

Plaintiffs are undeniably close in the chain of causation. Defendants' Anticompetitive Agreement excluded PLD from the Formula Market resulting in higher prices paid by Retailers

and passed on to Plaintiffs. Complaint ¶ 70, 100-01, 122-26. *See, e.g.*, *In re Propranolol Antitrust Litig.*, 249 F. Supp. 3d 712, 725 (S.D.N.Y. Apr. 6, 2017) (finding close chain of causation where end payer plaintiffs paid for drugs manufactured by defendants that were sold to wholesalers, then pharmacies, and finally purchased by plaintiffs); *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 813-14 (N.D. Ill. 2017) (explaining that *Associated Gen. Contractors'* "focus on 'directness' . . . was made in the context of analyzing the claim for damages by a plaintiff who was not in defendants' chain of distribution," and finding standing for indirect purchasers who "can fairly easily trace their purchases from Defendants through wholesalers and retailers to consumers").

The cases cited by Defendants all involve claims with fatally attenuated connections to the alleged anticompetitive conduct. *See Paycom Billing Servs., Inc. v. Mastercard Int'l, Inc.*, 467 F.3d 283, 293 (2d Cir. 2006) (alleging that absent anticompetitive agreement, MasterCard may have issued cards for American Express and Discover, which then would have increased their networks, thereby pressuring MasterCard to compete for merchants and accordingly make its policies more merchant-friendly, boosting the merchant plaintiff's profits); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 383 F. Supp. 3d 187, 223-24 (S.D.N.Y. 2019) (alleging that plaintiffs purchased K-cups involving "one or two intermediaries" without any explanation of the identity of the intermediaries or how often there was one versus two).

Second, Defendants argue there are other actual or potential plaintiffs who would be better enforcers of the antitrust laws. (Ds' Brief at 7). This is of no moment. The Second Circuit has made clear that the relevant question is whether the plaintiff is "***an*** entity most motivated by self-interest, not ***the*** entity most motivated by self-interest." *DDAVP*, 585 F.3d at 688-89 (emphasis added) ("Even if the competitors might be the most motivated, the plaintiffs are also

significantly motivated due to their natural economic self-interest in paying the lowest price possible.") (cleaned up); *see also In re Int. Rate Swaps Antitrust Litig.*, 261 F. Supp. 3d 430, 493 (S.D.N.Y. 2017) ("The existence of a superior victim does not, however, require dismissal," noting that "effective enforcement of the antitrust laws is enhanced, not inhibited, by continued collaboration of the class and the Javelin/Tera plaintiffs."); *Propranolol*, 249 F. Supp. 3d at 725 (holding that end-payors had sufficient self-interest in litigation, and that existence of direct purchaser claims did not foreclose end-payors' antitrust standing). Because Plaintiffs have a sufficient self-interest in the litigation, they are efficient enforcers.

### B.    Plaintiffs Have Article III Standing.

Defendants argue Plaintiffs lack standing because the Complaint fails to sufficiently connect Defendants' Anticompetitive Agreement with Plaintiffs' claimed damages. (Ds' Brief at 7-9). "[A]t the pleading stage, standing allegations need not be crafted with precise detail, nor must the plaintiff prove his allegations of injury." *Baur v. Veneman*, 352 F.3d 625, 631 (2d Cir. 2003); *see also FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*, 2017 WL 3600425, at *9 (S.D.N.Y. Aug. 18, 2017) ("[A] plaintiff need not prove his case at the pleading stage in order to have constitutional standing."). The Complaint plausibly alleges how the Anticompetitive Agreement caused Plaintiffs' injury.[3]

"The causal connection element of Article III standing, i.e., the requirement that the plaintiff's injury be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court does not create an onerous standard." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016) (cleaned up). "[I]t is a standard lower than that of proximate causation." *Id.* "A defendant's conduct that injures a

---

[3] It also alleges how Perrigo's acquisition of the Gateway Plant caused Plaintiffs' injury, a fact not addressed by Defendants.

plaintiff but does so only indirectly, after intervening conduct by another person, may suffice for Article III standing." *Id.* at 55-56. "This 'lesser burden' as between traceability and proximate cause is particularly true at the pleading stage." *Oliver v. American Express Co.*, 2020 WL 2079510, at *5 (E.D.N.Y. April 30, 2020) (quoting *Connecticut v. Am. Elec. Power Co., Inc.*, 582 F.3d 309, 346 (2d Cir. 2009) *rev'd on other grounds*, 564 U.S. 410 (2011)). The Complaint readily satisfies this "low burden" and does not rest on "speculative leaps of logic." *Oliver*, 2020 WL 2079510, at *5; (Ds' Brief at 8).

First, no leap of logic is required to infer that had PLD been able to compete against Perrigo in the supply of Formula to Retailers, prices would have decreased. *See* Complaint ¶ 70. Plaintiffs' allegations of reduced prices but-for the Anticompetitive Agreement are based on "basic economic assumptions" concerning supply and demand. *See Oliver*, 2020 WL 2079510, at *5-6 (holding plaintiffs met their burden where they alleged that absent "anti-steering rules," merchants would steer customers to card networks that charged merchants the lowest fee, which would precipitate price competition and reduced prices). "[S]uch assumptions are acceptable at the pleading stage to meet the traceability requirement, especially in the antitrust context." *Id.* (citing *Adams v. Watson*, 10 F.3d 915, 923 (1st Cir. 1993) (allegations of economic harm "based on standard principles of supply and demand" are "routinely credited by courts in a variety of contexts").

Defendants ignore key allegations in the Complaint to advance the counterintuitive argument that even if Gerber had supplied PLD with Formula, PLD and Perrigo would not have

competed on price. (Ds' Brief at 8-9). On the one hand, Defendants disregard specific allegations of price effects:

> PLD attempted to enter the Relevant Market, which would result in broader supply options for Retailers, lower prices, and increased output. Such *increased competition would concomitantly result in lower prices for consumers such as Plaintiffs and members of the Classes*.

Complaint ¶ 70 (emphasis added). On the other hand, Defendants' argument is based on a single sentence in a Perrigo press release, stating that in 2022, Perrigo had insufficient capacity to fully supply Perrigo's 17 Store-Brand customers. *Id.* ¶ 49, n.8. Perrigo's press release says nothing about Formula prices, let alone whether the entry of a competitor would have driven those prices downward. In effect, Defendants are asking the Court to resolve factual disputes about whether PLD and Perrigo would have competed to supply Formula to Retailers, and, if so, whether they would have competed on price. Asking the Court to set aside basic economics is bad enough; doing so at the pleading stage is worse. *See Adams*, 10 F.3d at 923; *see also Osborn v. Visa Inc.*, 797 F.3d 1057, 1065–66 (D.C. Cir. 2015) ("A Rule 12(b)(1) motion, however, is not the occasion for evaluating the empirical accuracy of an economic theory. Because the economic facts alleged by the Plaintiffs are specific, plausible, and susceptible to proof at trial, they pass muster for standing purposes at the pleadings stage.").

Defendants also argue that even if PLD sold Formula to Retailers at lower prices, Plaintiffs fail to allege with particularity that Retailers would have reduced prices paid by Plaintiffs. (Ds' Brief at 9). Defendants again impose an obligation that does not exist at the pleading stage. *See Osborn*, 797 F.3d at 1065-66. In any event, no giant leap is required to infer that Retailers would lower prices to consumers if their costs for those same goods decreased. Such basic economic concepts are "routinely credited by courts in a variety of contexts." *See Adams*, 10 F.3d at 923.

12

### C.    Plaintiffs Allege Ongoing Harm Warranting Injunctive Relief.

Suggesting Plaintiffs have not adequately alleged entitlement to injunctive relief, Defendants ignore that their anticompetitive behavior continues to artificially inflate Formula prices and will continue to do so until they are enjoined therefrom.

Plaintiffs have standing to pursue claims for injunctive relief when, as here, ongoing anticompetitive conduct results in inflated prices. *See* Complaint ¶¶ 129, 132, 139; *see, e.g.*, *Miami Prods.*, 546 F. Supp. 3d at 248 ("Here, the Indirect Purchaser Plaintiffs have alleged that Defendants are engaged in an ongoing anticompetitive conspiracy that continues to result in artificially inflated prices for caustic soda. This is sufficient to allow the Indirect Purchaser Plaintiffs to proceed on their request for injunctive relief under § 16."). In contrast to "cases where no standing was found due to the distant possibility of a future threat," allegations concerning the "ongoing nature" of the allegedly anticompetitive conduct "plausibly suggest that the same alleged injury will continue to occur." *Barry's Cut Rate Stores Inc. v. Visa, Inc.*, 2019 WL 7584728, at *20-21 (E.D.N.Y. Nov. 20, 2019).

As to the Complaint's allegations, Defendants incorrectly assert that Plaintiffs only allege past injury, as opposed to ongoing or threatened harm. (Ds' Brief at 10-11). To the contrary, Plaintiffs allege that Perrigo presently maintains its Formula monopoly, and that Retailers still have no choice but to pay Perrigo's monopoly prices. *See* Complaint ¶¶ 7, 9, 53, 80, 93, 98, 101. Plaintiffs also allege how Perrigo continues to actively cement its control over the market. *See id*. ¶¶ 11, 96-98. As a result, Plaintiffs and other class members continue to pay more for Formula than they would have in a competitive market. If the Court grants injunctive relief, PLD and potentially other competitors could enter the market and lower prices.

Defendants' authorities are not on point. This is not a situation where courts have found no "likelihood of future or continuing harm" when the defendant has "ceased selling" the

13

offending product. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016).[4] Nor is it a situation where there was no threat of recurring violations because "following investigations, guilty pleas and fines" defendants reformed their operations and ceased the offending conduct. *Contant v. Bank of Am. Corp.*, 2018 WL 5292126, at *4 (S.D.N.Y. Oct. 25, 2018).

Defendants also contend Plaintiffs are not entitled to injunctive relief because monetary damages are sufficient. (Ds' Brief at 11-12). But as Defendants' own authority recognizes, a plaintiff may demonstrate that the alleged injury is "capable of being redressed through injunctive relief" by alleging that the defendants were "engaging in the unlawful practice against the plaintiff[s] at the time of the complaint." *Robidoux v. Celani*, 987 F.2d 931, 938 (2d Cir. 1993). As discussed above, Plaintiffs allege Defendants' continuing anticompetitive conduct inflates Formula prices. Complaint ¶ 132. Monetary damages are thus insufficient to address the continuing harm resulting from Defendants' conduct. *See Miami Prods.*, 546 F. Supp. 3d at 248-49 (denying motion to dismiss claim for injunctive relief under the Clayton Act, where plaintiffs alleged an ongoing conspiracy that continued to artificially increase prices).

Defendants' reliance on *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006), is misplaced. (D's Brief at 12). *eBay* addressed the standards required to impose a permanent injunction after a trial verdict. 547 U.S. at 390. While Plaintiffs will ultimately have to prove they are entitled to the relief they seek, Defendants cite no authority requiring them to prove entitlement to such relief at the pleading stage. Plaintiffs plausibly allege that Defendants are

---

[4] Also distinguishable is Defendants' reliance on mislabeling cases. (*See* Ds' Brief at 10). Because infant formula is used for a limited period of a child's life, not all Plaintiffs can allege they intend to purchase Formula again, but it is likely that at least some of them will. For example, after the filing of the Complaint, Plaintiff Daker had another child and intends to purchase Formula again. Plaintiffs can amend the Complaint to allege as much if the Court deems it necessary.

continuing to make the Formula market less competitive, and that injunctive relief would make it more competitive.

### D.  The Complaint States a Federal Antitrust Claim.

#### 1.  Plaintiffs Properly Define the Relevant Market.

Plaintiffs allege Perrigo abused its monopoly power in the Relevant Market, defined as "the sale of Store-Brand infant formula to Retailers in the United States." Complaint ¶ 2. Defendants do not contest the sufficiency of this antitrust market definition. (Ds' Brief at 15); PLD Opinion, 715 F. Supp. 3d at 459 (holding that PLD sufficiently alleged the relevant market as "sales of store-brand infant formula to the retailers themselves."). Instead, they suggest Plaintiffs' allegations fall short because the challenged conduct occurred in a different market— the market for supplying distributors like PLD with Formula—and that Plaintiffs fail to define this alternate market or Defendants' power therein. (Ds' Brief at 15). This argument ignores the Complaint's allegations. Complaint ¶¶ 50, 77-80.

Even assuming the market to supply Formula to distributors like PLD—as opposed to Retailers—is the relevant market for this analysis, Plaintiffs have sufficiently alleged such market is dominated by Defendants and is not competitive, and that Abbott and Mead "lack the additional capacity to expand their production of infant formula beyond their current levels utilized for their national brands, and they do not have the ability to further scale up production to sell infant formula for resale as Store-Brand infant formula to Retailers." Complaint ¶ 50. Gerber and Perrigo conspired to prevent any market entrant wishing to supply Retailers with Store-Brand formula from doing so. *Id.* Thus, to the extent a separate market existed between Formula suppliers and distributors (like PLD), it was a monopoly fully controlled by Gerber, which was the sole supplier with the capacity to supply a distributor. *Id.* Perrigo then assumed full control of that monopoly, and thwarted PLD's efforts to compete, by entering into the

Anticompetitive Agreement and ultimately acquiring Gerber's Wisconsin manufacturing plant. *Id.* ¶¶ 96-98.

Another case cited by Defendants (Ds' Brief at 15-16), *Dickson v. Microsoft*, 309 F.3d 193 (4th Cir. 2002), is distinguishable. There, the plaintiff alleged that Microsoft had engaged in conspiracies with personal computer ("PC") manufacturers Compaq and Dell, foreclosing competition in the relevant software markets. *Id.* at 206-207. While the *Dickson* plaintiff sufficiently alleged Microsoft's power in the relevant software market, it did not allege that the PC manufacturers had power in the PC market, which the plaintiff conceded was "fiercely competitive." *Id.* at 207. Accordingly, there was no way "to demonstrate that rival software firms' access *to Compaq or Dell* was an important component of those firms' potential ability to compete in the software markets, or that Microsoft's agreements with Compaq and Dell substantially hindered the entrance or operation of these rivals in the software markets or denied them access to a significant number of consumers of software." *Id.* at 208.

Here, in contrast, Plaintiffs' allegations fill the gaps the Fourth Circuit found missing in *Dickson*. Gerber was the only firm able to supply a distributor with Formula, and Perrigo has a monopoly in the market for distributing it. Complaint ¶ 50. While a software supplier's access to Compaq or Dell did not prevent that supplier from competing in the software markets, PLD's lack of access to Gerber's Formula supply did prevent it from competing to supply Retailers.

Further, unlike *Dickson*, this is not a tying case, which requires analysis of multiple markets, *i.e.*, those for the alleged tying and tied products. *See Dickson*, 309 F.3d at 207 n.18. The facts here are much closer to those in *In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, 940 F. Supp. 2d 367 (E.D. La. 2013), in which the plaintiffs challenged exclusive dealing agreements between the largest pool supply manufacturers and the largest pool supplies distributor. *Id.* at

16

373. The court distinguished *Dickson*, emphasizing that the complaint alleged that the manufacturer defendants were the largest in the industry and possessed the "'must have' inputs for wholesale distributors. *Id.* at 398; *see also In re Surescripts Antitrust Litig.*, 608 F. Supp. 3d 629, 654 (N.D. Ill. 2022) ("Here, the Pharmacies allege what the *Dickson* plaintiffs omitted[,]" that the excluded competitor could not compete without access to a conspirator's business).

### 2.    Plaintiffs Allege Defendants Substantially Foreclosed PLD from the Relevant Market.

In the context of Gerber's and Perrigo's exclusive dealing arrangement, Plaintiffs must allege "a substantial foreclosure of competition in the relevant market." *Xerox Corp. v. Media Scis. Int'l, Inc.,* 511 F. Supp. 2d 372, 389 (S.D.N.Y. 2007) (cleaned up). The Complaint plainly does so, and this Court has already ruled, based on highly similar allegations, that "[t]he Anticompetitive Agreement prevented distributors like PLD from obtaining any supply of store-brand infant formula and competing with the Perrigo Defendants for sales to U.S. retailers." PLD Opinion, 715 F. Supp. 3d at 463. Plaintiffs allege that (1) PLD sought to enter the market for the sale of Formula to Retailers, but were shut out by Defendants' Anticompetitive Agreement (Complaint ¶¶ 82-93); (2) Defendants further cemented their complete control over the Relevant Market when Perrigo acquired the Gateway Plant and Gerber's Good Start infant formula brand (*id.* ¶ 96); and (3) with high barriers to entry, PLD could not obtain Formula elsewhere (*id.* ¶¶ 50, 54-64).

Defendants argue that "new" allegations in Plaintiffs' Complaint require the Court to revisit its conclusion that the Anticompetitive Agreement "enabled the Perrigo Defendants to maintain their monopoly by blocking distributors, like PLD from selling Gerber-manufactured store-brand infant formula." PLD Opinion, 715 F. Supp. 3d at 463. Specifically, Defendants argue that Plaintiffs fail to explain why PLD could not have obtained formula from "a smaller

17

United States competitor" or Abbot or Mead. (Ds' Brief at 17); *see* PLD Opinion, 715 F. Supp. 3d at 463 ("Of existing infant formula manufacturers, only the Perrigo Defendants and Gerber have the capacity to sell store-brand infant formula."). To the contrary, the Complaint alleges those were not viable supply alternatives. According to the FTC report referenced in Paragraph 50 of the Complaint, the other small United States companies manufactured just 1% of all formula in the United States in 2021 and 3% of all formula in 2022. Lent Declaration, Ex. 1, FTC Report, at 6-7. Moreover, that Mead was only able to import formula that "may not [have] compl[ied] with all statutory and regulatory requirements" through an FDA enforcement discretion letter during the height of a national formula shortage underscores that Gerber was PLD's only viable supplier. *See* Complaint ¶¶ 50, n.9.[5]

Significantly, Defendants' attacks on Plaintiffs' allegations fail at this stage of the litigation. Recognizing the fact-intensive nature of a substantial foreclosure analysis, courts have rejected such arguments at the pleading stage. *See ProSearch Plus, LLC v. VFM Leonardo, Inc.*, 2013 WL 6229141, at *7 (C.D. Cal. Dec. 2, 2013) (finding it "premature," on a motion to dismiss, "to determine whether the agreements do in fact leave open alternative channels of distribution" such that they foreclosed a substantial share of the market); *In re Ductile Iron Pipe Fittings (DIPF) Direct Purchaser Antitrust Litig.*, 2013 WL 812143, at *19 (D.N.J. Mar. 5, 2013) ("[W]hether the alleged exclusive dealing arrangements foreclosed a substantial share of the line of commerce is a merits question not proper for the pleading stage.").

*Power Analytics Corp v. Operation Tech., Inc.*, 2018 WL 10231437, at *20 (C.D. Cal. July 24, 2018) (Ds' Brief at 17-18), is inapposite. There, the plaintiff failed to allege why certain

---

[5] *See also Infant Formula Enforcement Discretion Policy: Guidance for Industry*, FDA-2022-D-0814 (May 2022), at 1, available at https://www.fda.gov/media/158476/download?attachment (last visited December 9, 2024).

competitors "do not 'represent a viable alternative' for component suppliers like Plaintiff.'" In contrast, the Complaint explains that Mead and Abbott were not "viable alternatives" because they lacked capacity to supply PLD, leaving Gerber as the only supplier with available supply for PLD to challenge Perrigo's monopoly.

### E.    Plaintiffs' Claims Under State Law Should Proceed.

#### 1.    State Antitrust Laws.

Defendants move for dismissal of Plaintiffs' antitrust claims under the laws of California, Illinois, Michigan, Minnesota, Nebraska, New York, North Carolina, Tennessee, and Virginia on the same grounds as the federal antitrust claims. As shown above, Plaintiffs plausibly allege claims under the Sherman Act, and therefore, state antitrust claims under the laws of the states at issue. *See Mayor & City Council of Baltimore v. Merck Sharp & Dohme Corp.*, 2023 WL 8018980, at *11 (E.D. Pa. Nov. 20, 2023) ("[W]here [] federal antitrust, state antitrust, and state consumer protection claims [are] all rooted in the same anticompetitive conduct, the complaint's antitrust allegations are generally sufficient to support the [state-law] claims."). Defendants also maintain Plaintiffs fail to state antitrust claims under the laws of California, Michigan, Minnesota, Nebraska, and New York due to a lack of antitrust injury (Ds' Brief at 19-20), but Plaintiffs have alleged antitrust injury. *See* Section IV.A.1., *supra*.

#### 2.    State Consumer Protection Laws.

Defendants argue (Ds' Brief at 21) that because Plaintiffs have failed to state claims under the Sherman Act, they have necessarily failed to state claims under the relevant consumer protection laws of Florida, Missouri, New Hampshire, or South Carolina. Plaintiffs have stated claims under the Sherman Act and therefore have stated claims under the relevant consumer protection statutes. *See* Section IV.A.-D, *supra*.

3.     **Illinois and South Carolina.**

Defendants contend Plaintiffs are not permitted to bring class actions under the Illinois Antitrust Act ("IAA") or the South Carolina Unfair Trade Practices Act ("SCUTPA"). District courts in the Second Circuit, however, have held that procedural requirements do not foreclose Plaintiffs from bringing class actions under these statutes in federal court. The IAA's prohibition on indirect purchaser class actions "is procedural, not substantive or intertwined with Illinois rights and remedies, and thus not applicable in federal court." *Blue Cross & Blue Shield of Vermont v. Teva Pharm. Indus., Ltd.*, 712 F. Supp. 3d 499, 545 (D. Vt. 2024) (internal quotations omitted); *see also, e.g.*, *Miami Prods.*, 546 F. Supp. 3d at 246 (holding that the IAA's class action bar is procedural and denying motion to dismiss the claim); *Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, plc*, 2018 WL 7197233, at *32 (S.D.N.Y. Dec. 26, 2018) (same); *In re Aggrenox Antitrust Litig.*, 2016 WL 4204478, at *6 (D. Conn. Aug. 9, 2016) (same).

For similar reasons, and consistent with ample precedent, Plaintiffs may also bring their class action under the SCUTPA. *See Id.* at *9 (court "not persuaded" by defendants' SCUTPA class action argument, reasoning that the "analysis … is not materially different than the parallel analysis in the discussion of Illinois law"); *see also In re Dealer Mgmt. Sys. Antitrust Litig.*, 680 F. Supp. 3d 919, 990 (N.D. Ill. 2023) (holding that the Illinois and South Carolina statutes' class action bars are preempted by Rule 23); *In re Pork Antitrust Litig.*, 495 F. Supp. 3d 753, 791 (D. Minn. 2020) (same); *Broiler Chicken*, 290 F. Supp. 3d at 819-21) (same, noting it "will follow the majority of courts on this issue").[6]

---

[6] Plaintiffs stipulate to the dismissal of their claim brought under the Virginia Antitrust Act.

4.      **State Unjust Enrichment Laws.**

    a)      **Plaintiffs Have Standing to Pursue Unjust Enrichment Claims on Behalf of Class Members in States in which They Do Not Reside.**

Defendants concede Plaintiffs have standing to bring claims under the laws of the 14 states in which named Plaintiffs reside (Ds' Brief at 22), but argue the other states' unjust enrichment claims must be dismissed. The Second Circuit says otherwise. "[A]s long as the named plaintiffs have standing to sue the named defendants, any concern about whether it is proper for a class to include out-of-state, nonparty class members with claims subject to different state laws is a question of predominance under Rule 23(b)(3)," not a question of standing under Article III. *Langan v. Johnson & Johnson Consumer Co., Inc.*, 897 F.3d 88, 93 (2d Cir. 2018); *see also, e.g.*, *DeSimone v. Select Portfolio Servicing, Inc.*, 2024 WL 4188851, at *28 (E.D.N.Y. Sept. 13, 2024); *Gibson v. Bartlett Dairy, Inc.*, 2022 WL 784746, at *9 (E.D.N.Y. Mar. 15, 2022).[7]

    b)      **Plaintiffs Adequately Allege Unjust Enrichment Claims.**

Defendants posit, without specifics, that there are "material differences" among state unjust enrichment laws. (*See* Ds' Brief at 23). Plaintiffs are not required to separately allege the elements of unjust enrichment on a state-by-state basis at the pleading stage, as the elements of unjust enrichment are similar in every state. *Allianz Glob. Invs. GmbH*, 463 F. Supp. 3d at 432-33; *Propranolol*, 249 F. Supp. 3d at 729-30; *In re Credit Default Swaps Antitrust Litig.*, 2014 WL 4379112, at *18 (Sept. 4, 2014, S.D.N.Y.). "If plaintiffs have failed to allege facts that might be essential to a particular jurisdiction's law of unjust enrichment—or if that cause of action is unavailable in some jurisdictions—such shortcomings should be evaluated directly as a

---

[7] The authorities Defendants cite on this point (Ds' Brief at 22) predate *Langan* and are therefore impliedly overruled.

challenge to the legal cognizability of the claims, not … to the sufficiency of the pleading." *Blue Cross*, 712 F. Supp. 3d at 559-60 (expressly declining to follow *Miami Prods.*, 546 F. Supp. 3d at 247, cited by Defendants here, on this point). In *Miami Products*, the court dismissed the plaintiffs' unjust enrichment claims, granting them leave to amend. *Id*. at 250. The amended complaint included "over 100 additional paragraphs of largely rote or repetitive allegations with state-by-state point headings." *Blue Cross*, 712 F. Supp. 3d at 559. The *Blue Cross* court found the added allegations made no "difference to the defendants' ability to defend against the claims or to the plausibility analysis that the district court ultimately performed." *Id*. In contrast, that Defendants here have moved to dismiss unjust enrichment claims for the jurisdictions where they believe such relief is unavailable establishes unequivocally that the Complaint is sufficiently pled to give Defendants fair notice of the claims. *Id.* at 560.[8]

<blockquote>

**c)    Plaintiffs State Unjust Enrichment Claims Even in States that Have not Passed *Illinois Brick* Repealer Laws.**

</blockquote>

*Illinois Brick* is not a bar to unjust enrichment claims at the pleading stage. *See In re Generic Pharms. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 850 (E.D. Pa. 2019) (holding that "Illinois Brick does not require dismissal of the unjust enrichment claims" at the motion to dismiss stage); *King Drug Co. of Florence v. Cephalon, Inc.*, 702 F. Supp. 2d 514, 540 (E.D. Pa. 2010) (denying motion to dismiss unjust enrichment claims that were alleged to be an end run

---

[8] Regarding Defendants' argument that Plaintiffs' unjust enrichment claims fail because their antitrust claims fail, Plaintiffs allege facts showing Defendants violated the Sherman Act, rendering Defendants' argument moot. *See* Sections IV.A.-D., *supra.* In any case, Plaintiffs' unjust enrichment claims do not hinge on successful antitrust claims. *See In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 383 F. Supp. 3d at 269 ("[E]ven if the IPPs failed to allege an antitrust claim, their unjust enrichment claims would survive."). To the contrary, courts have permitted unjust enrichment claims based on principles of pleading in the alternative and the availability of equitable remedies even if there are legal remedies. *Id.*; *Blue Cross*, 712 F. Supp. 3d at 561 (holding it would be "premature" to dismiss unjust enrichment claims because "those claims are pled in the alternative as authorized by Fed. R. Civ. P. 8(d).").

around statutory limitations on remedies), abrogated on other grounds by *In re K-Dur Antitrust Litig.*, 686 F.3d 197 (3d Cir. 2012); *In re G-Fees Antitrust Litig.*, 584 F. Supp. 2d 26, 46 (D.D.C. 2008) (same). Indeed, "[n]o reason or logic supports a conclusion that a state's adherence to the rules of *Illinois Brick* dispossesses a person not only of a statutory legal remedy for an antitrust violation, but also dispossesses the same person of his right to pursue a common law equitable remedy." *Generic Pharms.*, 368 F. Supp. 3d at 850 (cleaned up). Moreover, the concerns that "motivate" the holding of "*Illinois Brick* – the complexity associated with correctly apportioning recovery among direct purchasers, middlemen, and ultimate consumers, are not implicated in the context of unjust enrichment claims because the very nature of such claims requires a focus on the gains of the defendants, not the losses of the plaintiffs." *Id.* (cleaned up).

Even if the Court dismisses Plaintiffs' unjust enrichment claims in states without *Illinois Brick* repealer statutes, Defendants incorrectly include Alabama, Connecticut, and Maryland in the list of states that do not permit indirect purchaser claims under their state antitrust laws. (Ds' Brief at 24-25); *see Carefirst of Maryland, Inc. v. Johnson & Johnson*, 2024 WL 3858249, at *26 (E.D. Va. Aug. 16, 2024) (citing Conn. Gen. Stat. § 35-46a(1), Md. Code Com. Law § 11-209(b)(2)(i)); Ala. Code § 6-5-60(a)). Similarly, while Arkansas, Florida, Massachusetts, Missouri, Montana, and Pennsylvania have not enacted *Illinois Brick* repealer statutes, those states permit indirect purchaser claims under their consumer protection laws and courts have accordingly permitted parallel unjust enrichment claims in similar cases. *See, e.g., In re Opana Er Antitrust Litig.*, 2016 WL 4245516, at *2 (N.D. Ill. Aug. 11, 2016) (allowing Florida, Massachusetts, Missouri and Pennsylvania unjust enrichment claims "[b]ecause indirect purchasers are allowed to recover damages for antitrust conduct under the statutes of these states"); *Carefirst*, 2024 WL 3858249 at *26 (same, as applied to Arkansas and Montana).

### d)    Plaintiffs State Unjust Enrichment Claims Under New York and California Law.

Defendants contend that California does not recognize unjust enrichment as a cause of action. While there is mixed authority on the issue, courts have held that unjust enrichment is an independent claim under California law. *See Sergeants Benevolent Ass'n*, 2018 WL 7197233, at *59 (construing indirect purchaser unjust enrichment claim as one for quasi-contract and accordingly denying defendants' motion to dismiss California unjust enrichment claim); *In re Pork Antitrust Litig.*, 495 F. Supp. 3d at 791 (denying motion to dismiss California unjust enrichment claims: "[U]njust enrichment has been held to be an independent cause of action in California courts.") (citing *Ghirardo v. Antonioli*, 924 P.2d 996, 1002-03 (Cal. 1996)).

Plaintiffs' New York unjust enrichment claim is also proper because Plaintiffs may plead unjust enrichment in the alternative under New York law. *See Ford v. Rensselaer Polytechnic Inst.*, 507 F. Supp 3d 406, 419 (N.D.N.Y. 2020). In *Ford*, a contract case, the court permitted plaintiffs' unjust enrichment claims because if defendant successfully proved there was no valid contract, plaintiffs' unjust enrichment claims could still be viable and were thus not duplicative of the contract claims. *Id*. Similarly, here, if Defendants successfully prove, for instance, that Plaintiffs are not efficient enforcers of antitrust laws and thus their antitrust claims must fail, *Gatt*, 711 F.3d at 76, Plaintiffs' unjust enrichment claims could still survive, as being an efficient enforcer is not an element of unjust enrichment under New York law. *Ford*, 507 F. Supp. 3d at 419. Thus, contrary to Defendants' claim (Ds' Brief at 25), Plaintiffs' unjust enrichment claims are not duplicative and Defendants' reliance on *In re Nameda Indirect Purchaser Antitrust Litig.*, 2021 WL 2403727, at *38 (S.D.N.Y. June 11, 2021) is misplaced, because that decision occurred at summary judgment, when the court had a full record to assess whether the claims were truly duplicative.

## V.    CONCLUSION

For these reasons, the Court should deny Defendants' motion to dismiss.

Respectfully submitted,

Dated: December 10, 2024

*/s/ Jeffrey J. Corrigan*

Jeffrey J. Corrigan
Jeffrey L. Spector (*pro hac vice*)
Cary Zhang (*pro hac vice*)
SPECTOR ROSEMAN & KODROFF, PC
Two Commerce Square
2001 Market Street, Suite 3420
Philadelphia, PA  19103
Tel: (215) 496-0300
jcorrigan@srkattorneys.com
jspector@srkattorneys.com
czhang@srkattorneys.com

*Proposed Interim Liaison and Co-Lead
Counsel for the Proposed Classes*

Michael J. Boni (*pro hac vice*)
Joshua D. Snyder (*pro hac vice*)
John E. Sindoni (*pro hac vice*)
Benjamin J. Eichel (*pro hac vice*)
BONI, ZACK & SNYDER LLC
15 St. Asaphs Road
Bala Cynwyd, PA  19004
Tel: (610) 822-0200
mboni@bonizack.com
jsnyder@bonizack.com
jsindoni@bonizack.com
beichel@bonizack.com

Simon B. Paris (*pro hac vice*)
Patrick Howard (*pro hac vice*)
SALTZ MONGELUZZI AND
BENDESKY PC
120 Gibraltar Road, Suite 218
Horsham, PA  19044
Tel: (215) 575-3895
sparis@smbb.com
phoward@smbb.com

*Proposed Interim Co-Lead Counsel for the
Proposed Classes*

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 10, 2024, the foregoing was electronically served upon all counsel of record via electronic mail.

Dated: December 10, 2024

<u>/s/ *Jeffrey J. Corrigan*</u>
Jeffrey J. Corrigan

*Proposed Interim Liaison and Co-Lead Counsel for the Proposed Classes*